## THE PEOPLE v. JEAN BAPTISTE BRUZZO.

ENTERING NOLLE PROSEQUI TO USE DEFENDANT AS A WITNESS.—When two or more persons are jointly indicted, and jointly to be tried, and the District Attorney desires to use one of them as a witness for the people, and makes an application to the Court for his discharge for that purpose, the Court may, before this defendant has gone into his defence, discharge him from the indictment. But unless all these things concur, to wit: a joint indictment, a joint trial, an application on the part of the District Attorney that the defendant be discharged, to be used as a witness for the people, before he has gone into his defence, the Court has no power to direct a defendant to be discharged from the indictment.

DISCHARGE FROM INDICTMENT AN ACQUITTAL.—Should all the circumstances above stated concur and the Court discharge the prisoner, the discharge would be an acquittal in legal effect, and bar another prosecution.

DEFENDANT IN CRIMINAL CASE SWORN AS WITNESS.—Where one of two or more defendants, jointly indicted and jointly on trial, at the request of the District Attorney, but without any compulsion, takes the stand as a witness for the people, and voluntarily takes the oath, and his counsel objects to his being instructed by the Court that he need not say anything to criminate himself, and then, without any objection being made, or exception taken, voluntarily gives testimony, criminating both himself and his co-defendants ; this furnishes no ground for discharging the defendant who testifies from the indictment, or for arresting the judgment, and if erroneous, as no exception was taken, the Supreme Court cannot review the error.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court. ·

*Taylor* and *Hastings*, for Appellant.

The statute of 1851 (Wood's Digest, Article 1626, Secs. 368 and 370, p. 298) is the law of the land, and is not repealed nor in any manner affected by the amended statute of April 10th, 1855. (Wood's Digest, p. 330, Art. 1878, Sec. 13.)

The statute of 1851. concerns cases where there is a joint indictment *and a joint trial.* The words are—"when two or more persons are included in the same indictment, the Court may, *at any time before the defendant has gone into his defence* * *

6

discharge him, that he may be a witness for the people."
These words show that this statute contemplates and pro-
vides for a person whose trial with others is then in progress.

It is further shown by the next article, (1627) which is a
part of the same statute. The language is—"when two or
more persons are included in the same indictment, and the
Court is of the opinion that in regard to a particular defend-
ant *there is not sufficient evidence to put him upon his defence.*"
And yet further, by section 360, "the order mentioned in the
last *two* sections shall be deemed an acquittal * * * and shall
be a bar to *another* prosecution for the same offence."

It is, therefore, quite clear that the statute of 1851 applies
where persons jointly indicted are *jointly on trial,* and Art.
1626 points out the way—the only way—in which a person
on trial with others can be made a witness for the people,
viz: "by discharging him from the indictment."

The statute of 1855, (amendment,) Article 1878, p. 330,
which was relied upon by the Court below, has no relation
to such case. It is framed for different ends, and looks to
different objects. Its fair construction, its plain meaning is,
that where one is called as a mere witness in *another's* trial,
or where he is jointly indicted, but is to be *separately* tried
from those indicted with him, *before another jury,* such person
"may be compelled to be sworn as a witness against *another*,
but the testimony so given shall not be used in a criminal
prosecution against himself."

The statute of 1855 finds its best illustration in cases of
the character of *ex parte* Rowe, 7 Cal. 184, 185; *People* v.
*Hackley,* 24 New York, 74.

To construe the statute of 1855 as a repeal of the statute
of 1851, will be to strike down at a blow every rule of con-
struction known to the law.

1. The statute of 1855, if it repeal the statute of 1851,
does so by *implication.* Nothing is better settled than that
the law does not, even in civil cases, favor repeals by impli-
cation. It is only when the two statutes are directly hostile

to each other, and the words of the one directly repugnant to that of the other, that repeal by implication is permitted. (*Crosby* v. *Patch*, 18 Cal. 438, 441–2.)

There is nothing repugnant or hostile either in word or idea in these two statutes.

2. The law endeavors, if possible, to uphold both statutes. If both can fairly be made to stand, it is the duty of the Court to give effect to both. (*Crosby* v. *Patch*, 18 Cal. 441–2.)

Both can stand; both can have effect. Neither interferes with the other. They are totally distinct in their nature and character. They move in different spheres: the one touching a prisoner on his trial—the other, touching a *witness* when on the trial of another.

3. A statute should be construed as a whole, and with all its parts, together with statutes on the same subject, antecedent jurisprudence, legislation, and usage. (Sedgwick's Const. and Stat. Law, p. 379.)

Almost every page of the statute book, as regards criminal legislation, contains provisions shielding the prisoner from any attempt to compel him to be a witness against himself, and preventing him from offering evidence, even the slightest, on his own trial. (Wood's Dig. p. 270, Art. 1387, § 12; Id. p. 282, Arts. 1480–81–82–83.)

If the construction placed on the statute of 1855 by the Court below be correct, these, equally with the statute under consideration, are all repealed.

*McCullough,* Attorney-General, for Respondent.

The Act of 1855, so far as enforced in this case, certainly is not unconstitutional, nor is it when enforced entirely.

Bruzzo is called to the stand by the people—he does not object—goes willingly; but is anxious to say to the Court he will ask his discharge if he testifies. At first, the Court tells him he need not in his testimony criminate himself; he objects to *that*—wants to testify, and then the Court tells him if he answers, he must answer all questions in regard

to the matter. If a man proffers his testimony—is willing to criminate himself—no constitutional objections exist to receiving it; he may not be compellable, but is undoubtedly competent, and when thus offered he subjects himself to cross-examination like any other witness. (*Udal* v. *Walton*, 14 Mees. & Wels. 256; 1 Greenleaf Ev. § 451; *East* v. *Chapman*, 1 Mood. & Malk. 46; *State* v. *K.*, 4 N. H. 562, and cases cited; *Low* v. *Mitchell*, 18 Maine, 374; Appleton on Ev. p. 126, note p.) This is Bruzzo's case: He did not object; more, he objected to the Court objecting to his incrimination of himself. There is certainly nothing unconstitutional in a man confessing his own guilt—if he be sane; he can do it out of Court—why not in?

But second: Even though Bruzzo had been *compelled* to go on the stand and to testify against others, he was, and is, indemnified against the consequences by the very terms of the Act of 1855, and the principle of the constitutionality of such an Act is sustained by the authorities cited by appellant. (*People* v. *Mather*, 4 Wend. 229, and cases; *People* v. *Hackley*, 24 N. Y. 82, 83; and the case of *People* v. *Wenehamer*, 13 N. Y., 443–4, was where, if the defendant did not testify, the Act assumed his guilt, and of course there was no indemnity.) And in this State the constitutionality of this very Act is upheld. (*Ex parte* Rowe, 7 Cal. 184–5.)

The Court charged the jury here that Bruzzo's evidence must not be used by them in making up their verdict against him. In *ex parte* Rowe, the petitioner was compelled to testify against himself before a grand jury. Why not here the defendant be compelled to testify against himself on a trial jury, when in each case the testimony cannot be used against the witness?

By the Court, SHAFTER, J.

Jean Baptiste Bruzzo, the appellant, was jointly indicted with Pasquelena Lecari, and Francisco Pizzano, for the murder of one Pietro Lecari. On the morning of the day the

trial began, 21st of September, 1863, the District Attorney moved for separate trials, desiring to try Madame Lecari and Pizzano separately from Bruzzo. This motion was opposed by counsel for Bruzzo, and the same was denied by the Court—the Court ordering all the defendants to be tried together, which was accordingly done. A jury having been impanelled, evidence was elicited from various witnesses strongly implicating Bruzzo, consisting of confessions, admissions, etc. Toward the close of the case, and before the defendants had gone into their defence, the District Attorney called Bruzzo as a witness against Lecari and Pizzano. This was objected to by counsel for Lecari and Pizzano, "for that he, Bruzzo, was jointly indicted with the others, and was with them jointly on trial." The objection was overruled by the Court. The counsel for Bruzzo then requested the District Attorney to apply to the Court for the discharge of Bruzzo from the indictment, which request was refused. The counsel for Bruzzo then gave notice, in open Court, that if Bruzzo was made a witness he should himself apply for Bruzzo's discharge. The Clerk then swore Bruzzo in the case of Pizzano and Pasquelena Lecari. The counsel for Bruzzo, and also the counsel for the other two defendants, objected that Bruzzo was not sworn in the case; which objection was sustained, and Bruzzo was sworn "to tell the truth, the whole truth, and nothing but the truth, in the matter wherein The People of the State of California were plain-. tiffs, and Pizzano, Lecari, and Jean Baptiste Bruzzo, were defendants." The District Attorney then requested the Court to instruct Bruzzo that he need not say anything to criminate himself; that if he did it would be voluntary on his part. To this the counsel for Bruzzo objected. The Court instructed Bruzzo as requested; but before any question was asked Bruzzo, the Court sustained the objection of his counsel, and at the request of counsel withdrew the instruction, telling Bruzzo that "he must answer all questions in regard to the matter;" holding "that the law did not pro-

vide that the witness should not answer questions criminating himself, but only that his testimony should not be used against him." Bruzzo then testified fully in regard to the whole affair, and, in so doing, he criminated himself without stint. As soon as he had been examined, his counsel again requested the District Attorney to apply to the Court for Bruzzo's discharge from the indictment, which request was refused. The counsel for Bruzzo then himself moved for Bruzzo's discharge, and the motion, after argument, was denied, the counsel of Bruzzo excepting.

The case having been argued to the jury, the Court charged that Bruzzo's testimony, given on the stand, must not be used against him in making up their verdict, but only as against Pizzano and Lecari. The jury found all guilty of murder in the second degree.

October 17, 1863, the prisoners were brought into Court for sentence. A like motion was again made for the discharge of Bruzzo, but it was denied by the Court; to which ruling the counsel for Bruzzo excepted. To the question of the Court, whether the prisoners had anything to say why sentence should not be pronounced against them, Bruzzo, by his counsel, replied : " That having been made a witness on the part of the people, he deemed himself entitled to be discharged from the indictment, and that no sentence ought to be passed upon him." The Court, however, proceeded to pass sentence upon all of the prisoners, and Bruzzo, with the others, was sentenced to confinement in the State Prison for the term of his natural life. Bruzzo appeals from the judgment.

It is insisted, upon the part of the appellant, that the Court erred in denying the motion of Bruzzo's counsel for a discharge. The right of Bruzzo to be discharged is based, in argument, upon the 368th section of the Criminal Practice Act; it not being claimed that on the fact of this record the Court had any power to discharge him at common law. The section is as follows: " When two or more persons are

The People *v.* Jean Baptiste Bruzzo.

included in the same indictment, the Court may, at any time before the defendant has gone into his defence, on the application of the District Attorney, direct any defendant to be discharged from the indictment, that he may be a witness for the people."

After citing the foregoing section, counsel proceeds to argue, and with much force, that this section has not been repealed by section 13 of an Act passed in 1855, (Wood's Digest, page 330,) which section is as follows:

"In all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as witnesses against the other in relation to such crime or misdemeanor; but the testimony given by such witness shall in no instance be used against himself in any criminal prosecution, and any person may be compelled to testify as provided in this section."

It is insisted for the appellant that these sections are not at all in conflict with each other—that the first applies to one class of cases, and the second to another and distinct class; and that inasmuch as there is no express repeal of the former section, there can be no repeal wrought out by implication, under the well understood rules of construction by which such implications are governed. All this may be conceded, but it would not follow that Bruzzo was entitled to be discharged, as the argument for the appellant seems to assume. On the contrary, the only direct result that could be claimed would be that section 368 of the Act of 1851 is still in force.

This brings us to the only question which the case presents, viz: Was Bruzzo entitled to be discharged, under section 368 of the Act last mentioned?

The section contemplates the case of a joint indictment of two or more persons, a joint trial under the indictment, and an application by the District Attorney to the Court for the discharge of one of the defendants before he has gone into

his defence.    On the happening of these contingencies the Court is authorized, and, it may be, becomes bound, to discharge the particular defendant from the indictment, " that he may be thereafter a witness for the people." The foregoing series of facts and occurrences being found or given, the section in question dictates the rule of judicial conduct. Should the Court, in obedience to the rule, discharge the prisoner, the discharge would be an acquittal in legal effect, and bar another prosecution.    (Wood's Dig. 298, Sec. 370.)

From the moment of a discharge so secured, the party becomes a stranger to the proceedings, and cannot only be called, but, on general principles, can be compelled to take the stand as a witness for the people against the remaining defendant or defendants; and being no longer on trial or liable to future indictment, he may be compelled to criminate himself.    So much as to the scope and uses of section 368. It is merely a law unto itself.    It dictates a rule governing the case which it creates or recites, and it does no more.

Now, the record before us does not find the series of emphatic particulars upon which the duty and power of the Court to discharge is, by the section, made implicitly to depend.    It is true that some of them are found in the record, but it is equally true that others of them are not. The record not only fails to show an application to the Court by the District Attorney, but, on the contrary, it shows affirmatively that he persistently refused to make such application whenever requested so to do by Bruzzo's counsel.    True, the record shows that when the testimony of Bruzzo was completed, his counsel, in pursuance of notice given by him before Bruzzo took the stand, moved for his discharge; but it cannot, in our judgment, be successfully contended that an application by the counsel of the prisoner, particularly when made after his client's testimony had been given, was the legal equivalent of a like motion by the attorney for the people, made before the testimony had been commenced. In other words, the District Attorney and the counsel of a

defendant have not, under section 368, concurrent power to make the application to discharge. Should the doctrine of concurrent power pass for law, it is apparent that the rule in its practical workings would be attended with very anomalous results.

But, again : Bruzzo was not compelled to take the stand. The District Attorney called on him, and to the call no objection was taken by Bruzzo. Instead of an objection addressed to the Court, followed by a judicial ruling, the counsel of Bruzzo limited himself to a request addressed to the District Attorney, that he (the attorney) should make an application to the Court for Bruzzo's discharge, and on the refusal of the District Attorney to comply with the request, counsel merely superadded a verbal notice of motion to discharge, to be made by him when Bruzzo's testimony should be concluded; and thereupon Bruzzo, solicited indeed, but certainly not compelled by the " call " of the attorney for the prosecution, took the stand without demur. Throughout this entire scene the Court was silent, making no decision, and expressing no opinion. That Bruzzo went from the dock to the witness stand voluntarily is beyond controversy. Being upon the stand, he was sworn in the first instance to testify in the *People* v. *Lecari and Pizzano*; and on objection by his counsel that the oath was improper and valueless, for the reason that there was no such case pending, the Court made its first ruling, sustaining the objection. Thereupon and without any objection by counsel, or any ruling or intimation from the Court, and without any manifestation of unwillingness on the part of Bruzzo, he was sworn generally in the case as made in the indictment. As Bruzzo did not take this oath by judicial direction, and as he was not misled by any suggestion from the bench as to his duty in the matter of taking it, and as he must be presumed to have known his legal rights, we

7

hold that he took the oath voluntarily and without misapprehension. After the oath had been thus accepted by Bruzzo, the Court instructed him, at the instance of the District Attorney, that "he need not say anything to criminate himself, and that if he did it would be purely voluntary on his part." This instruction, in effect, limited the obligation of the oath by judicial interpretation, so as to relieve Bruzzo from the necessity of self-accusation, leaving him, indeed, without motive for disclosing his own participation in the alleged murder other than the relief which guilt always finds in confession, and the hope that if the conviction of the other defendants should be secured by his testimony, he could rely upon that fact as a ground of pardon in the event of his own conviction. But Bruzzo, apparently dissatisfied with the exemption so extended to him, objected to the exemption, through his counsel, and thus insisted in effect that the exemption should be cancelled or recalled. The Court, at his instance, withdrew the instruction, or rather recalled the lawful and humane monition that it had given him, "telling him that he must answer all questions in regard to the matter; holding that the law did not provide that the witness should not answer questions criminating himself, but only that his testimony should not be used against himself." Admitting that, disassociated from the context of facts, this instruction would be erroneous, still, when considered in connection with the events that immediately preceded it, we hold that it was an instruction given in effect at Bruzzo's solicitation. When he objected to the instruction "that he need not criminate himself," he virtually requested the Court to give the opposite exposition of the oath he had voluntarily taken. Should it be admitted that the instruction was not only erroneous, but also that the error is now before us for review, it would furnish no reason why Bruzzo should be finally discharged, but a reason simply why a new trial should be awarded. But no exception was in fact taken to the in-

struction on Bruzzo's behalf, and therefore the jurisdiction in error does not attach.

We add, that the case at bar not only does not fall within the Act of 1851, but is, in our judgment, equally foreign to the Act of 1855. It differs from the cases for which these Acts respectively provide, and in governing particulars. The record shows a case of joint indictment; joint trial; a request or call by the Prosecuting Attorney for one of the defendants for the purpose of examining him against the other two; he takes the stand voluntarily in answer to the call; he invites and without objection takes the oath in its most comprehensive form, and, under instructions which he has previously solicited, and to which he takes no exception when given, criminates his associates and himself; and on these antecedents the counsel of the witness, in pursuance of a notice previously given, moves the Court not merely to discharge the witness from the particular prosecution, but to finally acquit him, in effect, of the crime alleged against him. Power in the Judiciary to grant such a motion under such circumstances will be looked for in vain under any provision of our criminal code, and as vainly in the rules of the common law. An acquittal under such circumstances would be a species of judicial pardon, rescuing the prisoner on his own motion, and against the express or virtual protest of the Government, from a conviction made morally certain by evidence previously adduced.

The results are as follows: First—The Court has no power to discharge Bruzzo at common law, nor under the Act of 1851, on the motion of his own counsel. Second—Admitting that, on the facts of this case, the Court had no power to compel Bruzzo to take the stand as a witness, yet the record shows that Bruzzo was not subjected to such compulsion; and if the converse should be held to appear, still, as no exception was taken, we cannot review the error.

The judgment is affirmed.