[Crim. No. 14422. In Bank. Sept. 1, 1970.]

THE PEOPLE, Plaintiff and Appellant, v.
ALFRED TENORIO, Defendant and Respondent.

[redacted]

### COUNSEL

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Appellant.

Molly H. Minudri for Defendant and Respondent.

### OPINION

**PETERS, J.**—Defendant was convicted of possession of marijuana in violation of section 11530 of the Health and Safety Code. He admitted an eight-year-old prior conviction of possession of marijuana. Section 11530 provides no minimum term in the absence of a prior, but imposes manda-

tory minimum terms of two and five years for convictions with one and two or more priors, respectively. The respective maximum terms are 10 years, 20 years, and life.

The trial court dismissed the allegation of a prior conviction without the prior approval of the prosecutor, in direct violation of Health and Safety Code section 11718. That section provides that in any proceeding under the narcotics division of the Health and Safety Code (division X), "no allegation of fact which, if admitted or found to be true, would change the penalty for the offense charged from what the penalty would be if such fact were not alleged and admitted or proved to be true may be dismissed by the court or stricken from the accusatory pleading except upon motion of the district attorney."

The People appeal from the trial court's subsequent order granting probation.

■ In *People* v. *Sidener,* 58 Cal.2d 645 [25 Cal.Rptr. 697, 375 P.2d 641], a four-member majority of this court rejected an argument that section 11718 violates article VI, section 1, and article III of the California Constitution, which vest the judicial power in the judiciary and proclaim the separation of powers. If we were to follow *Sidener,* the order appealed from should be reversed, and the trial court directed to sentence defendant as a violator of section 11530 with one prior conviction.

The author of this opinion was a member of the *Sidener* majority, but has reexamined the views expressed therein. This court now concludes that *Sidener* must be overruled.

The majority opinion in *Sidener* denied that section 11718 encroached upon the constitutional province of the judiciary. The majority reasoned that since the prosecutor's common law power of nolle prosequi had existed for hundreds of years and had included the power to strike allegations that would increase punishment at the time of the adoption of the constitutional provision vesting "judicial power" in the courts, that provision could not be given "a meaning . . . it has never before been thought to have . . . to invalidate an act of the Legislature." (58 Cal.2d at pp. 647-648.) Noting that the forerunners of sections 1385 and 1386 (abolishing nolle prosequi and providing that prosecutors cannot abandon a prosecution except as provided in section 1385) were adopted in the first and second legislative sessions, respectively, the opinion argued the fact these sections "were necessary to give to the courts this power traditionally vested in prosecutors demonstrates that the common-law rule was not abrogated by the general language of the Constitution vesting the 'judicial power' in the courts." (*Id.,* at p. 648.) The majority's final historical argument cited Penal Code

section 1099—adopted by the same Legislature which adopted sections 1385 and 1386—which provides that a prosecutor may direct that a jointly charged defendant be discharged to be a witness for the prosecution, and *People* v. *Bruzzo,* 24 Cal. 41, which held that a trial judge had no power to dismiss such a defendant at common law or under section 1099's predecessor. "The *Bruzzo* case demonstrates that the power of dismissal is not vested exclusively in the courts, but may be given to the prosecutor by the Legislature." (58 Cal.2d at pp. 648-649.)

Conceding that the meaning of constitutional provisions and the scope of the judicial power "is not found in history alone," the majority opinion cited authorities for the propositions that prescribing punishment and defining offenses are legislative functions and that if charges have not been dismissed the court must pass sentence as prescribed by statute, and noted that prosecutors have broad discretion as to whether to prosecute an individual at all and under what provision. They urged: "It would exalt form over substance to hold that broad constitutional principles of separation of powers and due process of law permit vesting complete discretion in the prosecutor before the case begins, but deny him all such discretion once the information is filed." (*Id.,* at pp. 650-651.)

Finally, in concluding that section 11718 in effect provides only that a power "that might otherwise be exercised by the Adult Authority alone shall be exercised by district attorneys," the majority argued: "There are innumerable facts other than the commission of the crime itself that may have far more bearing on the punishment imposed than prior convictions. If not only their existence but their effect on punishment must be determined solely by courts, the indeterminate sentence law and the legislative restrictions on the court's power to grant probation must fall. The indeterminate sentence law has been sustained, however, on the theory that a conviction carries with it judicially determined liability for the maximum sentence and that any remission from that maximum may be determined by an administrative agency [citations], subject only to limited judicial review." (*Id.,* at p. 651.)

The majority disapproved, insofar as inconsistent, *People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241], and *People* v. *Valenti,* 49 Cal.2d 199 [316 P.2d 633].

Justice Schauer's lengthy dissent—concurred in by Justices White and McComb—answered the majority's historical argument by noting that nolle prosequi never existed in California and that the forerunner of Penal Code section 1386 recognized rather than caused its nonexistence. Briefly stated, Justice Schauer's argument was that the common law power of nolle prosequi was not part of that Mexican law which was retained by the 1849

Constitution—thereby becoming the law of California, that the adoption of the common law in 1850 was qualified by the rejection of that which was inconsistent with such California law, and that the nonexistence of the power of nolle prosequi was codified by the 1850 forerunner of section 1386 prior to legislation in the same year repealing all law not adopted by the Legislature.

Justice Schauer contended, however, that the dominant question was whether the power to dismiss a prior is an essential part of the judicial power today, since the framers could not have anticipated the drastic changes in the effects of prior convictions. Because of the seriousness and extent of such effects on punishment and rehabilitation, because of recognition—implied in statutes and express in decisional authority—that the judicial power must include the power to control a cause, and because section 11718 itself implies the existence of the judicial power to grant a motion to strike priors (albeit on the prosecutor's motion only), Justice Schauer concluded that the power to strike priors is an essential part of the judicial power. He concluded further that section 11718 constituted an invasion of that power because it grants to the prosecutor the unreviewable power to grant or to prevent a judicial resolution of a motion to strike priors, and because "Constitutional jurisdiction of the court to act cannot be turned on and off at the whimsy of either the district attorney or the Legislature. The power to act under our system of government means the power of an independent court to exercise its judicial discretion, not to servilely wait on the pleasure of the executive." (58 Cal.2d at p. 654.)

Justice Schauer set out the various habitual narcotics offender statutes, noted that striking a prior for the most part would have the effect of permitting the Adult Authority to release an offender earlier than were the prior retained, but would not compel such a release (as the Adult Authority under many of the statutes can retain the offender for life in its discretion regardless of the existence of a prior), and that a mandatory minimum term works at cross purposes with indeterminate sentences. He also argued that the absolute discretion which section 11718 vests in the prosecutor to permit or deny a defendant an opportunity to obtain an order striking priors denies that defendant due process and equal protection.

It is clear, however, that Justice Schauer was primarily concerned with separation of powers: He viewed *Sidener* as "a step toward totalitarian concentration of power in the executive; a power to be exercised without any legislative standard and without possibility of judicial review." (58 Cal.2d at p. 673.)

Justice White agreed with Justice Schauer, but added a brief dis-

sent—concurred in by Justice McComb—stressing the district attorney's status as a partial advocate, and arguing that vesting him with unreviewable power to preclude an order striking priors, "without any impartial tribunal to review his decision in the matter of sentencing, seems to me to do violence to our concept of constitutional government, and offends our oft repeated and proud boast that we are a government of law and not of men." (*Id.*, at p. 675.)

Because of the uncertainties in the law prior to 1850, we agree with all of the justices in *Sidener* that arguments based upon California's legal history prior to that date are undeterminative.

The history from and after the 1850 Legislature, however, is clear: No decision, and no legislation, prior to the adoption of section 11718 denied that the judiciary has that power to dismiss which was originally codified in the forerunner of section 1385. The prosecutor has never been able to "exercise" the power to dismiss a charged prior—he has only been able to invite the judicial exercise of that power. Section 11718 provides that no prior found true "may be dismissed *by the court* or stricken from the accusatory pleading *except* upon motion of the district attorney." (Italics added.) As Justice Schauer argued, the section itself recognizes that the dismissal power is still exercised by the court, but purports to condition that exercise upon a prosecutor's prior approval. Thus, even if the Legislature could constitutionally remove the power to strike priors from the courts, it has not done so, but rather has purported to vest in the prosecutor the power to foreclose the exercise of an admittedly judicial power by an appropriate judicial officer. It is no answer to suggest that this is but a lesser included portion of the prosecutor's discretion to forego prosecution, as the decision to forego prosecution does not itself deprive persons of liberty.

When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature. Just as the fact of prosecutorial discretion prior to charging a criminal offense does not imply prosecutorial discretion to convict without a judicial determination of guilt, discretion to forego prosecution does not imply discretion to sentence without a judicial determination of those factors which the Legislature has never denied are within the judicial power to determine and which relate to punishment. The judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial power must be independent, and a judge should never be required to pay for its exercise.

Finally, analogies to other forms of sentencing discretion, vested in indi-

vidual judges and the Adult Authority, cannot excuse section 11718's invasion of the judicial power.  ■  When an individual judge exercises sentencing discretion, he exercises a judicial power which must be based upon an examination of the circumstances of the particular case before him, and which is subject to review for abuse.  ■  The Adult Authority is a body selected on a statewide basis, composed of members selected for their expertise in the field of rehabilitation, and empowered to determine and redetermine sentences—within limits imposed by the exercise of judicial power (*In re Larsen,* 44 Cal.2d 642, 646-647 [283 P.2d 1043])—as individual inmates may respond to correctional programs.

In marked contrast, the discretion section 11718 purports to vest in prosecutors is unreviewable, and may therefore be exercised in a totally arbitrary fashion both in individual cases and by the adoption of county-wide policies precluding dismissal of priors regardless of the circumstances of individual cases. Clearly, analogies to judicial sentencing discretion and the Adult Authority powers limited thereby[1]—both of which must relate the facts of individual cases to competing individual and societal interests—cannot justify vesting in a partial advocate, the prosecutor, the power to prevent the exercise of both judicial discretion and Adult Authority expertise.

■  Thus we have concluded that Justice Schauer was correct in finding section 11718 violative of the California constitutional separation of powers, as that concept demands that the branches of government be co-equal and that a prosecutor not be vested with power to foreclose the exercise of a judicial power recognized in section 11718 itself.[2]

---

[1]The most significant effect of dismissing a prior is to trust to the discretion of the Adult Authority the determination of when an offender has become fit for release. The dismissal of a prior in defendant's case, as with many habitual narcotics offender provisions, cannot reduce the maximum term the Adult Authority may exact below the minimum it must exact if the prior is not struck. (Health & Saf. Code, §§ 11500.5, 11530, 11530.1, 11540, 11557, 11910, 11911.) With many of the remaining provisions, the dismissal of a prior has no effect whatsoever upon the maximum sentence the Adult Authority may exact. (*Id.,* §§ 11501, 11502, 11502.1, 11531, 11532, 11912, 11913.) Under only one provision can dismissal of priors reduce the maximum term below the mandatory minimum term applicable with the priors, and then only if the trial court dismisses two priors. (*Id.,* § 11500.)

[2]Inasmuch as today's decision relates only to sentencing and will not require any retrials, we have concluded that it should enjoy fully retroactive effect. (Cf. *In re Dabney,* 71 Cal.2d 1, 9-10 [76 Cal.Rptr. 636, 452 P.2d 924].) Any prisoner suffering a sentence imposed after the effective date of Health and Safety Code section 11718 (Sept. 18, 1959) and augmented by virtue of a prior narcotics conviction may file a habeas corpus petition with the superior court inviting the exercise of discretion to dismiss the prior conviction. Petitions should be filed in the court with territorial jurisdiction in the first instance, and transferred by that court to the sentencing court in the event the court with territorial jurisdiction was not the sentencing court. (*In re Caffey,*

The order appealed from is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk J., Burke, J., and Sullivan, J., concurred.

68 Cal.2d 762, 765, fn. 3 [69 Cal.Rptr. 93, 441 P.2d 933].) Petitions should not be filed with this court or the Court of Appeal. Upon receipt of such a petition, the sentencing court should follow normal sentencing procedures and grant appropriate relief whenever deemed warranted in its discretion.