[No. D015931. Fourth Dist., Div. One. Feb. 19, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
NADIR JAMIL MIKHAIL, Defendant and Appellant.

**COUNSEL**

Nadir Jamil Mikhail, in pro. per., Cleary & Sevilla and Charles M. Sevilla for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pat Zaharopolous, Holly D. Wilkens and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HUFFMAN, J.—On this appeal we determine that at the time of the initial sentencing the trial court was without authority to order the previously unconditionally court-approved guilty plea withdrawn and the reinstatement of the original charges. Under the particular facts of this case, the remedy for the trial court's error is to reverse the judgment entered after a subsequent jury trial, to reinstate the original guilty plea and to remand for sentencing according to that plea. We explain.

### FACTUAL SUMMARY

After a preliminary hearing, Nadir Jamil Mikhail was charged in an information with the murder of Robert Loftis (Pen. Code,[1] § 187, subd. (a)) and the attempted murder of (§§ 664/187, subd. (a)) and assault with a deadly weapon on (§ 245, subd. (a)(2)) Charles Hall. The information also alleged Mikhail was armed with and used a firearm in the commission of all offenses (§ 12022.5, subd. (a)) and committed great bodily injury in the crimes involving Hall.

The charges stemmed from an incident on January 26, 1991, about 11 p.m. in the driveway of a residence, where Mikhail had been summoned to help the teenage residents remove uninvited guests who had crashed their party thrown while their parents were out of town. Mikhail, together with two friends, was asked to help disperse all partygoers as the party had grown rowdy with the arrival of the uninvited drunken party-crashers. After about five to ten minutes most of the people had moved out of the house and into the driveway, preparing to leave. While Mikhail and his 2 friends stood at the top of the driveway watching people leave, a group of about 10 to 15 men came back up the driveway. Shortly thereafter, a confrontation began between Mikhail and his two friends and a small group of uninvited guests consisting of Charles Hall, Robert Loftis and Bryon Jobe. Fighting appeared imminent and Mikhail pulled a gun, firing a warning shot in the air. The confrontation continued. Mikhail then fired at Hall and into the crowd. Hall was hit in the left forearm and right leg, and Loftis was shot in the head and later died.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

Mikhail fled the scene and drove to Yuma, Arizona, where he caught an airplane to Los Angeles and later surrendered to the sheriff's office.

Reports about the driveway confrontation and the shootings conflicted. Mikhail claimed he shot the gun in self-defense and that the shot killing Loftis occurred only after he had been grabbed and jostled by others.

On May 21, 1991, after settlement negotiations but before jury trial commenced, Mikhail entered a "no deals" plea of guilty to the charge of voluntary manslaughter, a lesser included offense of the count 1 murder charge, and admitted the use of a firearm in the commission of that crime. In exchange for the plea, the People moved to dismiss all other charges.

The plea, taken by Judge Janet Kintner sitting as a judge of the superior court, contained a *Harvey* (*People* v. *Harvey* (1980) 112 Cal.App.3d 132 [169 Cal.Rptr. 153]) waiver and a factual finding that "upon a sudden quarrel or heat of passion [Mikhail] killed Robbie Loftis with the use of a firearm." Judge Kintner accepted this factual plea and incorporated the preliminary hearing transcript with it. In doing so, Judge Kintner stated:

"And let me say in this situation Judge Rodriguez has been working with the attorneys and talking to you about settlement even though I have this case for trial. For that reason I'm going to set this in his department for sentencing. [¶] You have the right to have the judge that takes the plea sentence you. Do you give up that right to give it back to Judge Rodriguez?"

In response Mikhail said, "Yes, I understand that."

Judge Kintner proceeded to explain that she had talked with Judge Rodriguez and with the defendant and was "convinced this is agreeable with him." Whereupon, the People stated for the record the reasons for making the motion to dismiss the remaining two counts against Mikhail and the court granted the motion.[2] Judge Kintner again reminded Mikhail she had talked with both attorneys and to Judge Rodriguez and made clear "there is absolutely no promise of anything less than the maximum [sentence]. It may

---

[2]The deputy district attorney stated: "The People have accepted the plea of guilty to voluntary manslaughter with the gun use which we agreed is a lesser included offense of count one of the information. It's also a no deals plea which all sentencing parameters are open to Judge Rodriguez . . . . [¶] Based upon the defendant's plea of guilty to the lesser included offense of manslaughter with the gun use enhancement the People will move to dismiss counts one and two with the enhancement allegations in their entirety. The People so move to dismiss counts two and three in the interest of justice because we believe with the *Harvey* waiver the sentencing judge will have adequate sentencing parameters to put upon the defendant due to his plea of the lesser included offense of count one."

not necessarily be the maximum, but there's no promise of anything else. He hasn't promised probation or a low term or midterm or anything else."

After ascertaining Mikhail understood the agreement and the People concurred in the court's assessment of it, Judge Kintner found Mikhail "has made an intelligent and voluntary waiver of his constitutional rights. He understands the nature of the charges and the consequences of his plea. And his admissions are free and voluntary. And there's a factual basis for the plea. And for that reason I will accept his plea." The court also registered an *Arbuckle* (*People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]) waiver in the taking of Mikhail's guilty plea.

In taking Mikhail's subsequent waiver of time for setting a date for sentencing before Judge Rodriguez, Judge Kintner commented that "[i]n a situation like this[,] having read the transcript from the preliminary hearing and the information that I have received, there is a great deal of unpredictability in a case like this. And you do not know how this will come across and what a jury will do. And that is the reason both attorneys have made this decision. And I understand it in this case and I can see why they have both done that. It is very understandable to both sides." Judge Kintner reiterated these remarks to the jury before she released them from the case after taking the plea.

At the time set for sentencing on the plea, Judge Rodriguez declined to sentence Mikhail, commenting "the court feels that this case ought to be tried and let the jury make the determination."

Defense counsel submitted the matter and the deputy district attorney objected, stating for the record the People "did have evidentiary problems and we operated under certain infirmities in going to trial on this case. The change of plea occurred in the trial department with the consent of the trial judge, who understood upon ruling on Evidence Code [section 1101, subdivision (b)] motions why the People did not go forward."

The deputy district attorney continued to object to Judge Rodriguez not sentencing Mikhail, stating:

"The People do not believe the court has the statutory authority to set aside this plea and not rule on it. This plea was not negotiated under Penal Code Section 1192.5. Based upon the contracted plea that we engaged in with the defendant in the trial department, based upon that judge's and the People's knowledge of this case, the reading of the preliminary hearing transcript, the understanding of the witness problems that we had under the

[Evidence Code section 1101, subdivision (b)] motion, and also certain evidentiary facts which were revealed to that judge, we negotiated the plea with an upper range term of 16 years. [¶] We would urge the court to go forward at this time with the sentencing and impose a 16-year prison commitment upon this defendant because, as we have informed the court, while there is a chance that we could be very successful in a trial, there [are] also evidentiary problems in this case."

Judge Rodriguez recognized the People's position and said he had no doubt the district attorney's office had plea bargained in good faith. Judge Rodriguez, however, said he could not "live with 16 years." Based on his reading of the records and the probation report, he would "not impose 16 years because I think the person deserves much more than 16 years for the damage he has done. [¶] He's taken a life, injured someone else who will be maned [sic] for life, so I'm not going to impose 16 years. I exercise my discretion, I set [the] plea aside, your objection noted for the record."

The matter then proceeded to jury trial before Judge Herbert J. Exarhos. Following trial, the jury found Mikhail guilty of second degree murder, of attempted second degree murder and of assault with a deadly weapon. All of the allegations were found to be true.

Mikhail was sentenced to 20 years to life for the murder to be served consecutively to a 12-year term imposed for the attempted murder with great bodily injury.

Mikhail has timely appealed, contending it was error to set aside his guilty plea to voluntary manslaughter, thereby voiding the subsequent trial judgment and sentence. In addition, and alternatively, Mikhail has alleged numerous prejudicial instructional errors at trial and prosecutorial misconduct during closing argument which tainted the fairness of his trial. Because we reverse on the basis of his first contention, we will not discuss his remaining assertions of error.

### DISCUSSION

█ Preliminarily, we note the People contend Mikhail has waived his right to raise any arguments concerning the setting aside of the plea. We think not.

The record reflects Mikhail's attorney submitted the matter of the court's withdrawal of the plea after a chambers conference with Judge Rodriguez and the deputy district attorney and after the judge expressed his ruling,

apparently made in chambers, on the record. The deputy district attorney then explicitly stated for the record the illegality of the trial court's action. Mikhail was not required to further object. As the court would not entertain the People's objection after its ruling, it would likely have been futile for Mikhail to likewise object. (See *People* v. *Zemavasky* (1942) 20 Cal.2d 56, 62 [123 P.2d 478]; *People* v. *Diaz* (1951) 105 Cal.App.2d 690, 696 [234 P.2d 300].)

Although in the interests of judicial economy the preference would have been for Mikhail to have pursued review of the trial court's ruling by way of petition for extraordinary writ before undergoing a full jury trial, we know of no authority requiring a defendant to pursue writ review of a ruling withdrawing a guilty plea in order to preserve issues for review on appeal. (See *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 450 [279 Cal.Rptr. 834, 807 P.2d 1063].)

■ Turning to Mikhail's first contention, we note he presents a variety of arguments in support of his assertion the plea bargain in this specific case should be enforced. The gist of these arguments is that once a court unconditionally accepts a plea and the defendant gives up rights in reliance upon the taking of the plea, such as giving up his *Arbuckle* rights to be sentenced before the judge who took the plea and giving up his right to remain silent in order to make statements to a probation officer for the preparation of a presentence report based on representations the plea is acceptable to the court, the court is without authority to void the guilty plea and reinstate dismissed charges, and it should be judicially and statutorily estopped from doing so. Mikhail thus contends the trial court's action in nullifying his plea at the sentencing hearing and reinstating the murder charges constitutes a denial of state and federal guarantees of due process of law, violates the doctrine of separation of powers of the California Constitution by overriding the prosecutorial charging function and in effect exercising powers vested solely in the executive branch, and violates the prohibition against being put twice in jeopardy. If all else fails, Mikhail claims that under the specific facts of this case the trial court's order vacating his plea was an abuse of discretion.

We need not discuss each of Mikhail's arguments separately as his general premise the trial court was without authority under the specific facts of this case to order his previously unconditionally court-approved guilty plea withdrawn is supported by a review and accommodation of two California Supreme Court doctrines which deal with the separation of powers. (See *People* v. *Superior Court (Felmann)* (1976) 59 Cal.App.3d 270, 275 [130 Cal.Rptr. 548].) "One doctrine defines the scope of exclusive judicial

authority in the area of sentencing and disposition of charges, while the other delineates the sweep of executive power in the filing of criminal charges and the negotiation of their disposition with a defendant willing to negotiate." (*Ibid.*)

Based on article III, section 3 of the California Constitution,[3] cases have held the charging function of a criminal case is within the sole province of the executive branch, which includes the Attorney General and the various district attorneys (Cal. Const., art. V, § 13). (*People v. Sidener* (1962) 58 Cal.2d 645, 650 [25 Cal.Rptr. 697, 375 P.2d 641], overruled on other grounds in *People v. Tenorio* (1970) 3 Cal.3d 89, 91 [89 Cal.Rptr. 249, 473 P.2d 993].) Once the executive power has been exercised by the filing of a criminal charge, "the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (*People v. Tenorio, supra,* 3 Cal.3d at p. 94.) ■ Thus while the legislative branch bears the sole responsibility and power to define criminal charges and to prescribe punishment, it is the executive branch which decides which crime to charge and the judicial branch which imposes sentence within the legislatively determined limits for the chosen crime. (*People v. Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481].) Hence, separation of powers mandates that a statute may not constitutionally require the consent of one branch for the proper exercise of another branch's power, unless specifically provided for in the California Constitution. (See *People v. Tenorio, supra,* 3 Cal.3d at p. 94; *People v. Superior Court (Felmann), supra,* 59 Cal.App.3d at p. 275.)

Moreover, based on the separation of powers, cases have held it is solely the function of the executive branch to engage in any negotiations with the defense by which a more lenient disposition to a criminal charge is secured without trial. (*People v. Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193].) ■ Although the Legislature has made judicial approval an essential statutory condition precedent to the effectiveness of any agreement worked out by the defense with the prosecution (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People v. West* (1970) 3 Cal.3d 595, 607-608 [91 Cal.Rptr. 385, 477 P.2d 409]), the process of "bargaining" is between the People represented by the prosecutor on one side and the defendant represented by counsel on the other and "the court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection." (*People v. Orin, supra,* 13 Cal.3d at p. 943.)

As the court in *People v. Superior Court (Felmann), supra,* 59 Cal.App.3d at page 276 noted:

---

[3]Article III, section 3 of the California Constitution declares: "The powers of state government are legislative, executive and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

"The exclusive authority of the judiciary in the matter of sentencing and process on the one hand, and the equally exclusive authority of the executive with respect to charging of crimes and negotiating the disposition of charges on the other, are not inherently inconsistent. Accommodation is possible while preserving both principles." Thus the well-accepted practice of plea bargaining in American criminal procedure, expressly endorsed by statute in California since 1970 (§§ 1192.1-1192.5; *People* v. *Johnson* (1974) 10 Cal.3d 868, 871, fn. 1 [112 Cal.Rptr. 556, 519 P.2d 604]), generally is reviewed so as to preserve the separation of powers.

Most of the authorities in opposition to Mikhail's first contention, cited by the People in its respondent's brief, are based upon pleas taken under section 1192.5. As stated in *People* v. *Rodriguez* (1987) 191 Cal.App.3d 1566 [237 Cal.Rptr. 137], section 1192.5 " 'explicitly authorizes a guilty plea which may "specify the punishment" to the same extent it could be fixed by the court upon conviction. The statute also makes it unmistakably clear that once the plea accepted by the prosecutor obtains initial judicial approval, the defendant "cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea." The court's initial approval is not binding and may be withdrawn at the time of sentencing; "in such case, the defendant *shall* be permitted to withdraw his plea if he desires to do so." (Italics added.) Although the meaning of such unambiguous language seems plain enough to be accorded faithful application without necessity of further construction [citation], any uncertainty as to legislative intention must be resolved in favor of the offender. [Citation.] [¶] Thus, while it lies within the exclusive province of the court to accept or reject a proffered plea bargain [citations], which also retains broad discretion to withdraw its prior approval at the time of sentencing [citation], there is no authority consistent with due process requirements to justify implementation of the bargain in a manner contrary to its explicit terms, at least in the absence of the defendant's consent. [Citations.]' " (*People* v. *Rodriguez, supra*, at pp. 1569-1570, citing *In re Falco* (1986) 176 Cal.App.3d 1161, 1165-1166 [222 Cal.Rptr. 648], fn. omitted.)[4]

Here, however, Mikhail's plea was not taken pursuant to section 1192.5. Rather he pleaded guilty to voluntary manslaughter as a lesser

---

[4]Section 1192.5 specifically provides in pertinent part: "Upon a plea of guilty . . . to an accusatory pleading charging a felony, . . . the plea may specify the *punishment* to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it. [¶] Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, *except as otherwise provided in this section,* cannot be sentenced on such plea to a *punishment* more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea. [¶] If the court approves of the plea, it shall inform the defendant prior to the

offense of the count 1 murder charge and admitted gun use in the commission of that crime in a "no deals" agreement. As such, the plea falls under section 1192.1, which provides: "Upon a plea of guilty to an information or indictment accusing the defendant of a crime or attempted crime divided into degrees when consented to by the prosecuting attorney in open court and approved by the court, such plea may specify the degree thereof and in such event the defendant cannot be punished for a higher degree of the crime or attempted crime that the degree specified." Section 1192.4 provides that if a plea entered under section 1192.1 is not accepted by the prosecuting attorney and approved by the court, "the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available." Section 1192.4 also states a withdrawn plea under that section may not be used in evidence in "any criminal, civil, or special action or proceeding of any nature. . . ."

Sections 1192.1 and 1192.4 do not contain the conditional language found in section 1192.5 regarding the court's approval of a plea not being binding. Nor do they contain any language regarding a specific punishment. The text of section 1192.5 specifically refers to a plea agreeing to a certain punishment. Section 1192.5 also includes a discussion of the exercise of powers as between the prosecutor and the court. Logically such language is necessary in section 1192.5 since any action taken by the prosecutor to limit or bind the exercise of judicial authority to sentence a defendant without the court's consent or approval would violate the separation of powers. Inclusion of similar language in sections 1192.1 and 1192.4 is missing. The absence of such qualifying language is supportive of Mikhail's claim.

Certainly, the Legislature was aware of the delicate balance between the exercise of powers involved in negotiating and accepting a plea in a criminal case when it enacted the statutory scheme for the taking of plea agreements. Accommodation of both the executive and judicial powers is inherent in that

---

making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea. [¶] If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available. [¶] If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil, or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals." (Italics added.)

scheme. Sections 1192.1 through 1192.4 codify the authority of the executive to negotiate the disposition of charges and the authority of the judiciary to accept the process. Section 1192.5 codifies the limited power of the executive to make an agreement concerning punishment and makes clear the judiciary's exclusive authority of sentencing, which includes the discretion to determine the punishment for any conviction, be it rendered by plea, court or jury. In accepting a plea under section 1192.1, a court is not limited in its sentencing powers to determine the punishment for the conviction before it and no separation of powers is violated. To interpret sections 1192.1 through 1192.4 to include similar limiting language, as found in section 1192.5, would render those sections mere surplusage.

We thus construe section 1192.1 as providing statutory authority for an unconditional plea to a lesser offense or degree than that originally charged after the acceptance of the plea by the prosecuting attorney and its approval by the court. This construction comports with the separation of powers and the plain language of the statutory scheme enacted by the Legislature for plea bargaining in California.

Applying this interpretation in this case, we conclude the trial court was without authority to nullify the unconditional plea agreed upon by the prosecutor and approved by the court pursuant to section 1192.1. The court's action in nullifying the plea violated the separation of powers and deprived Mikhail due process rights. Mikhail having been convicted upon his guilty plea, there remained nothing for the trial court to do other than to pronounce sentence. (*People* v. *Goldstein* (1867) 32 Cal. 432, 433; *People* v. *Thompson* (1970) 10 Cal.App.3d 129, 135 [88 Cal.Rptr. 753].) Any disagreement with the result here reached must be directed to the Legislature. (See *In re Stanley* (1976) 62 Cal.App.3d 71, 77 [131 Cal.Rptr. 608].)

Our conclusion is further supported by a reading of the cases concerning the withdrawal of guilty pleas under section 1018 (see *People* v. *McGee* (1991) 232 Cal.App.3d 620, 623 [283 Cal.Rptr. 528]), by the cases discussing the court's authority to dismiss an action under section 1385 (see *People* v. *Orin, supra,* 13 Cal.3d at pp. 943-949; *People* v. *Superior Court* (1962) 202 Cal.App.2d 850, 853-855 [21 Cal.Rptr. 178]), and by a line of cases reviewing plea agreements not made under section 1192.5 which failed because the trial court did not agree at sentencing with the already approved bargain (see *Mourmouris* v. *Superior Court* (1981) 115 Cal.App.3d 956, 961-963 [172 Cal.Rptr. 1]; *People* v. *Superior Court (Barke)* (1976) 64 Cal.App.3d 710, 716 [134 Cal.Rptr. 704]; *In re Stanley, supra,* 62

Cal.App.3d at p. 77; *People* v. *Bravo* (1965) 237 Cal.App.2d 459, 461-463 [46 Cal.Rptr. 921].)[5]

■    Having determined the trial court acted without authority and thus violated the plea bargain agreement in this case, we turn to the appropriate remedy to be afforded Mikhail, mindful that "the harmless error test is inapplicable to a situation involving failure to fulfill the terms of a plea bargain." (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 865 [187 Cal.Rptr. 441, 654 P.2d 211].) As our Supreme Court has recognized, "in the context of a broken plea agreement, there is more at stake than the liberty of the defendant or the length of his term. 'At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . .' [Citations.]" (*Id.* at p. 866.)
■    Thus, "[t]he goal in providing a remedy for breach of the bargain is to redress the harm caused by the violation without prejudicing either party or curtailing the normal sentencing discretion of the trial judge. The remedy chosen will vary depending on the circumstances of each case." (*Id.* at p. 860.)

Here, the error consisted of Judge Rodriquez vacating the plea and forcing Mikhail to trial over his and the prosecutor's objections. The matter had gone to Judge Rodriquez only after Mikhail waived his right to be sentenced by Judge Kintner, the judge who had taken the plea, based on her representations Judge Rodriguez concurred with the plea and would sentence according to the plea. The plea did not bind Judge Rodriguez to any set sentence, and the record does not show there was a change of circumstances between the taking of the plea and the time of sentencing, nor evidence any fraud on Mikhail's part. Under these "very special" circumstances (see *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13-15 [136 Cal.Rptr. 409, 559 P.2d 1028]), we think the proper remedy is to return the proceedings to the point at which the court erred and reroute them to the appropriate track.

That track would be to reverse and vacate Mikhail's judgment of conviction, reinstate his guilty plea to voluntary manslaughter with a firearm use enhancement, and remand the matter to Judge Kintner to sentence under the unconditional plea agreement.

---

[5]We do not find *People* v. *Stringham* (1988) 206 Cal.App.3d 184 [253 Cal.Rptr. 484], cited by respondent, to be controlling in this case. Although the factual predicate stated there appears to be similar to the case before us, the plea taken in *Stringham* was specifically accepted with admonishment to that defendant it was conditional and the plea was treated by all parties as falling under section 1192.5. The plea here was not made under section 1192.5.

Moreover, we find no merit in respondent's argument section 1192.7 required a fuller statement of reasons before the plea was taken in this serious felony case. A reading of the record clearly shows the prosecutor agreed to the plea due to problems with obtaining witnesses to prove its case. Such shows substantial compliance with that section.

## DISPOSITION

The judgment is reversed with directions to the superior court to reinstate Mikhail's guilty plea to voluntary manslaughter with a firearm use enhancement and to set sentencing before Judge Janet Kintner.

Wiener, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied March 9, 1993, and respondent's petition for review by the Supreme Court was denied May 20, 1993. Panelli, J., was of the opinion that the petition should be granted.