[Crim. No. 6905.   First Dist., Div. Four.   Feb. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. OREN REGI-
NALD WILLIAMS, Defendant and Appellant.

Molly H. Minudri for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and James A. Aiello, Deputy Attorneys General, for Plaintiff and Respondent.

CHRISTIAN, J.—This case vividly illustrates the hazards of confusion and unintended injustice which seem to be inseparable from active judicial participation in the process commonly known as "plea bargaining." Appellant originally

pleaded not guilty to three counts of selling marijuana (Health & Saf. Code, § 11531) and two counts of selling dangerous drugs (Health & Saf. Code, § 11912). On the morning which had been set for trial, while the venire of prospective jurors waited in the courtroom, the judge conversed at length in chambers with the prosecutor and the defendant, who was attended by his wife and by counsel. The first hour of the conversation was not reported, but a summing up of the negotiations was put on record by the judge as follows:

"I understand that the defense of the case involves the issue of entrapment, and as I am sure Mr. Fitzgerald [defense counsel] has explained to you, the defense of entrapment is a difficult defense for the defendant to sustain. But, in any event, the *defense itself involves basically an admission of the transaction,* an admission that a sale of these drugs took place.

"THE DEFENDANT: Yes, sir.

"THE COURT: You understand this, do you not?

"THE DEFENDANT: Yes, sir.

"THE COURT: I also understand that your principle [*sic*] concern, and I can well understand it since I am familiar with the background to some degree, your principle concern at the moment is the question of going back to state prison." (Italics added.)

A few moments later, the judge added:

"THE COURT: . . . Now, under the law in this State, 'if you are convicted of any of these counts and have previously been convicted'—and I am reading it to you right out of the code book, 'of an offense of any of the laws of any other State which if committed in this State would have been punishable as a felony, then the Court cannot grant probation and must send you to state prison, but—' and it is a big but, *that prior offense has to be charged in the Information in order to cause this mandatory prison provision of the law to operate. . . .* Therefore, as matters now stand, if you were to plead to this Information to some of the counts that are contained therein, under the law as I interpret it, and the probation office agrees with this interpretation, and I believe counsel agree with it, the Court would have the power to grant probation and would not be compelled to send you to state prison, do you understand this?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, I am willing to, and again, I want to do this carefully because I want you to understand that I am not trying to tell you what you should do, or persuade you to do anything. You must make up your own mind in this regard. But I am willing to tell you this much as I think a person in your position should have an appreciation of the possible consequences. I understand that the District Attorney's office will recommend that you be sent to state prison. I am willing to tell you that I will make no promises at this time to send you there or not to send you there. I will have the matter referred to the Probation Office, have a probation report prepared, examine it, consider their recommendation, and consider the recommendation of the District Attorney's office, and the statements of your defense counsel before any sentence is pronounced. In other words, *the decision will be mine and it won't be a mandatory decision.* Under the present state of this case, *I am not compelled to send you to state prison if you are convicted. I will decide whether to do that just as I would in any other case.* That's been the sum and substance of this discussion we have had in here for about an hour. . . .

"THE DEFENDANT: Well, in other words, if I go to trial and I am found guilty, then there is absolutely nothing that can happen except San Quentin?

"THE COURT: If you go to trial and *if this prior conviction is charged, which I assume it will be,* you are right and you are found guilty, the Court has no power to do anything other than send you to state prison; . . ." (Italics added.)

Appellant then withdrew his not guilty pleas to all five counts; he pleaded guilty to one marijuana count and one dangerous drugs count and the other three were dismissed. A probation report was filed; it concluded that appellant was ineligible for probation, apparently because he had been armed during one of his numerous prior offenses, or because of the number of prior convictions.

At the hearing on the application for probation the following discussion occurred:

"THE COURT: . . . At the time Mr. Williams entered a plea the record was in such shape that it was clear that no mandatory prison sentence would have to be imposed, that is, he would not be sentenced as a second-time narcotics offender. The understanding as I recall it at that time and I want to be sure that everyone has the same understanding, was the

matter of the sentencing would be left in the sole discretion of the Court.

"Now, under the law, in view of the defendant's prior record, the Court must make a finding of unusual circumstances in order to avoid sentencing the defendant to state prison for this offense, and I understand from the position previously taken by the District Attorney's office that while they have recommended state prison sentence, and do presently recommend a state prison sentence, they are willing to leave the matter solely in the hands of the Court and concur in any findings the Court might be willing to make.

"MR. ZUNION [The prosecutor] : That's correct, your Honor. When we had our discussion with Mr. Fitzgerald in chambers, I am sure everyone in chambers, including the defendant, was under the impression that the Court, in view of—or despite the defendant's plea to two felonies, two felony counts of sale, everyone felt that the Court would have discretion and that the basis on which he entered his plea, I am sure, and my recommendation is still that he be sentenced to state prison. *However, in view of what we have discovered in the law in 1203, particularly, it appears that the Court does not have the discretion.* However, the People are willing —I am willing and I will commit my office to a concurrence with whatever sentence this Court imposes in view of the circumstances under which the plea was originally taken."

The judge expressed agreement with the prosecutor's statement; he then continued : "I think I have read [the probation report] three times; I have read the preliminary transcript. . . . The apparent evidence in the case portrays Mr. Williams as a rather sophisticated dealer in narcotics. . . . I can't in this type of case where the law requires a finding of unusual circumstances, make a finding of unusual circumstances and as I see it, I have no choice but to sentence the defendant to state prison."

Appellant had pleaded guilty, as he now points out, after he had received from the judge :

1. Erroneous, or at best incomplete, legal advice concerning the implications of an entrapment defense. (*People* v. *Perez* (1965) 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934].)

2. An implied warning that if appellant did not plead guilty the prosecutor would charge a prior narcotic offense, bringing on a mandatory prison sentence.

3. An assurance that if appellant pleaded guilty the deci-

sion regarding the sentence ''will be mine and it won't be a mandatory decision. . . . I will decide . . . just as I would in any other case.''

Then, after reading the probation report, the court concluded that under Penal Code section 1203, even though no priors had been charged, appellant could not be admitted to probation in the absence of unusual circumstances ''in which the interests of justice would best be served thereby. . . .'' Finding no such circumstances the judge denied probation.

It is clear that the judge did not intend to mislead or coerce the appellant. It is also true that the judge's statement regarding the discretion to be exercised by him did not contain an express representation that no circumstance, such as that which later emerged, would limit the court's freedom of action. But neither was that highly significant possibility mentioned, in a statement that purported to give appellant full advice concerning the factors to be weighed in deciding how to plead.

Disposition of a criminal case by a negotiated plea is not necessarily subject to condemnation; indeed under proper safeguards it is essential to expeditious and fair administration of justice. But special problems are presented when the *judge* participates in plea negotiations. Experience suggests that such judicial activity risks more, in terms of unintentional coercion of defendants, than it gains in promoting understanding and voluntary pleas, and thus most authorities recommend that it be kept to a minimum (see, e.g., *United States* ex rel. *Elksnis* v. *Gilligan* (S.D.N.Y. 1966) 256 F.Supp. 244; American Bar Assn. Advisory Committee on the Criminal Trial, Standards Relating to Pleas of Guilty (tentative draft 1967) 7-8, 11, 72-74; Owens, *Plea Bargaining . . . Agreeing . . . Recommending?* (1967) 26 Legal Aid Briefcase 55; Comment, *Judicial Plea Bargaining* (1967) 19 Stan. L.Rev. 1082, 1090-1092; Comment (1964) 32 U.Chi.L.Rev. 167, 183-188). If the judge does participate in plea discussions he should not convey any impliedly threatening messages as to what the prosecutor will do if the accused persists in pleading not guilty. And if an uncoerced bargain is made it must be carried out by the court or withdrawal of the guilty plea must be allowed.

Because of the hazards we have mentioned the usual practice in California* is for the judge to ascertain, through

*Federal practice, under the impetus of the Federal Rules of Criminal Procedure (rule 11) calls for more detailed judicial involvement in the

his questioning or that of the prosecutor, that a defendant who indicates a desire to plead guilty has been fully advised *by his attorney* of his rights, the nature of the crime charged, and the consequences of his guilty plea. The court should also ascertain that the plea is voluntary. (Alarcon, Selected Criminal Court Proceedings (Superior Court, Los Angeles County 1967.) 29-30; Conference of California Judges, Manual of Procedures for the Superior Court of the State of California (1966) 23.)

Of course at arraignment the judge may properly give advice to the accused, supplemental to that given by counsel, if justice requires it. But any such advice should be accurate and not coercive. Caution is indicated by the fact that defense counsel, possessing information produced by his own investigation or disclosed to him in confidence by the defendant, may be in a better position than the judge to give the defendant well-grounded advice.

We conclude that the combination of circumstances we have reviewed show that the plea of guilty was not the result of appellant's free and informed choice. Appellant should have been afforded an opportunity to withdraw his plea of guilty when it proved that the court's representation to appellant was not entirely correct (*People* v. *Delles* (1968) 69 Cal.2d 906, 910 [73 Cal.Rptr. 389, 447 P.2d 629]).

The Attorney General accurately observes that if the plea was entered under duress or under the influence of mistaken legal advice given by the court, appellant could have moved to withdraw the guilty plea. Upon an appropriate showing this could even have been done after judgment, by means of a *coram nobis* petition or motion to vacate the judgment. (*People* v. *Wadkins* (1965) 63 Cal.2d 110, 113 [45 Cal.Rptr. 173, 403 P.2d 429].) But appellant has a constitutional right to be free of duress as he pleads to a criminal charge. His failure to seek relief in the trial court does not accomplish a waiver of that right. (See *Johnson* v. *Zerbst*

acceptance of a guilty plea (see, e.g., *Von Moltke* v. *Gillies* (1948) 332 U.S. 708, 722-724 [92 L.Ed. 309, 320-321, 68 S.Ct. 316] [''routine inquiry'' as to defendant's knowledge when pleading guilty not sufficient on part of judge]; *Munich* v. *United States* (9th Cir. 1964) 337 F.2d 356, 360 [record must show judicial inquiry into the defendant's understanding of his plea]; *Kimbrough* v. *United States* (5th Cir. 1955) 226 F.2d 485 [judicial participation in plea discussions approved because of the help given the defendant]) although the judge himself need not impart the requisite information to defendant (*United States* v. *Swaggerty* (7th Cir. 1955) 218 F.2d 875, 879; Mathes, Jury Instructions and Forms for Federal Criminal Cases (1961) 27 F.R.D. 39, 203).

(1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].) The irregularity of the proceedings which led to the judgment appears from the record on appeal, and does not depend upon a resort to other evidence of the character that might be received in a *coram nobis* proceeding or other collateral attack upon the judgment.

The judgment is reversed with directions to grant a motion to withdraw the plea of guilty.

Devine, P. J., and Rattigan, J., concurred.