[Civ. No. 48302. Second Dist., Div. One. June 18, 1976.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
HERSHEY HAROLD FELMANN, Real Party in Interest.

## COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Hollopeter & Terry and Don H. Terry for Real Party in Interest.

Paul Arthur Turner as Amicus Curiae on behalf of Real Party in Interest.

## OPINION

**THOMPSON, J.**—This petition for writ of review, prohibition, or mandate asserts that Penal Code section 1192.5 precludes a trial judge from entering into a sentence bargain dispositive of a criminal proceeding unless the prosecuting attorney consents. ■■ We conclude that: (1) section 1192.5 does preclude the trial judge from entering into a bargain in the sense of negotiating a more lenient sentence than would be imposed after trial in return for a plea of guilty or nolo contendere; (2) Penal Code section 1192.5 cannot constitutionally be construed to prevent a trial judge from indicating what sentence he will impose if a given set of facts is confirmed, irrespective of whether guilt is adjudicated at trial or admitted by a plea; and (3) the record here is equivocal as to which of those procedures was followed by the trial court. Accordingly, we order that a peremptory writ of mandate issue directing the trial court to clarify its record and proceed as the clarification dictates.

Defendant, real party in interest, was charged with four counts of grand theft and four counts of forgery. Defendant entered his plea of not guilty to the charges and the matter was set for trial. On the day of trial, defendant requested the court to entertain a plea of no contest pursuant to Penal Code section 1192.5. He conditioned his plea upon suspension of proceedings and the grant of probation conditioned upon restitution and a fine of $1,000 with no time in jail. Defendant's counsel described his understanding of the prosecution's evidence disclosing the details of the crimes charged; he represented that defendant was married and lived with his children in the area, that his only prior conviction was for soliciting customers from the sidewalk into a jewelry store, that defendant had a cardiac condition, and that he was in the jewelry business. Defendant specified that, if after reviewing the probation report the court were not inclined to impose sentence in the terms outlined, the nolo contendere plea could be withdrawn and the matter proceed to trial.

Citing the portion of Penal Code section 1192.5 which requires the prosecutor's consent to a conditional plea, the prosecuting attorney challenged the power of the court to accept the plea in the form it was offered. The district attorney also objected to the trial court's ordering a pre-plea probation report pursuant to Code of Civil Procedure section 131.3. He noted that crimes similar to those with which defendant was charged were being committed in all parts of California so that any sentence imposed would have a deterrent effect and hence a significance beyond the particular case.[1]

The trial judge commented that accepting defense counsel's representation of the defendant's record, background, and heart condition, "this is not a proper case for the defendant to be sentenced to the state prison." The court indicated it would accept the conditional plea, stating "I am not accepting this to save court time, but as a practical application of the law."

After appropriate *Tahl* waivers, defendant's plea of no contest was accepted as to all counts. The prosecution sought a prerogative writ from this court to prevent the trial court from proceeding further on the conditional plea. Because of the importance to the administration of the criminal law of the issues here raised, we issued our alternative writ and stayed proceedings in the trial court.

Penal Code section 1192.5, as pertinent, states: "Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, the plea may specify the punishment . . . and may specify the exercise by the court . . . of other powers legally available to it. [¶] Where such plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced . . . to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea." The section specifies that the court's approval of the plea is not binding and that approval may be withdrawn if at the hearing on probation or time for pronouncement of judgment the court's further consideration indicates a different disposition. If the approval of the court is withdrawn, the defendant may withdraw his plea and enter any other plea available by law.

---

[1] The dissent's language concerning a situation in which a court denies the prosecutor the right to argue the severity of sentence to be imposed discusses an issue not involved here. The trial court permitted prosecutorial comment at the hearing.

Application of Penal Code section 1192.5 to the situation presented by the case at bench requires the accommodation of two sets of California Supreme Court doctrine. Both sets deal with separation of powers (Cal. Const., art. III, § 3). One doctrine defines the scope of exclusive judicial authority in the area of sentencing and disposition of charges, while the other delineates the sweep of executive power in the filing of criminal charges and the negotiation of their disposition with a defendant willing to negotiate.

■ While the legislative branch of government bears the responsibility and power to define criminal offenses and to prescribe punishment in mandatory or alternatively permissible forms, the imposition of sentence within the legislatively determined limits is exclusively a judicial function. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481].) ■ Hence, the exercise of sentencing power cannot be made subject to the consent of the district attorney because the requirement of that consent is an injection of the executive into the province of the judicial branch of government. (*People* v. *Tenorio* (1970) 3 Cal.3d 89, 95 [89 Cal.Rptr. 249, 473 P.2d 993].) ■ Similarly, once the executive power has been exercised by the filing of a criminal charge "the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (*People* v. *Tenorio, supra,* at p. 94; *People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 65 [113 Cal.Rptr. 21, 520 P.2d 405].) Thus, separation of powers mandates that a statute may not constitutionally require the consent of the prosecuting attorney to judicial action striking prior convictions to mitigate the sentence imposed (*People* v. *Tenorio, supra,* at p. 94), determining that a charged offense should be tried as a misdemeanor rather than a felony (*Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 127 [95 Cal.Rptr. 524, 485 P.2d 1140]), civilly committing a defendant to a narcotics rehabilitation program (*People* v. *Navarro, supra,* 7 Cal.3d 248, 259), granting probation in an unusual case where, except in unusual cases, probation may not be granted after conviction of a defined offense under particular circumstances (*People* v. *Clay* (1971) 18 Cal.App.3d 964 [96 Cal.Rptr. 213]), or ordering a defendant charged with a narcotics offense to be "diverted" into a pretrial program of treatment and rehabilitation (*People* v. *Superior Court (On Tai Ho), supra,* 11 Cal.3d 59, 61).

As the process which leads to acquittal or sentencing is a function exclusively vested within the judicial branch of government, the charging function of the criminal process is the sole province of the executive. (*People* v. *Sidener* (1962) 58 Cal.2d 645, 650 [25 Cal.Rptr. 697, 375 P.2d

641]; overruled on other grounds in *People* v. *Tenorio, supra,* 3 Cal.3d at p. 91.) ■ It is equally the function of the executive to engage in any negotiation with the defense by which a lenient disposition of the charge made is secured without trial. (*People* v. *Orin* (1975) 13 Cal.3d 937, 942 [120 Cal.Rptr. 65, 533 P.2d 193].) "[T]he court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial objection." (*People* v. *Orin, supra,* at p. 943.) The "plea bargaining" process foreclosed to the judicial branch of government includes the acceptance of a plea of guilty in return for "clement punishment." (*People* v. *Orin, supra,* at p. 942.)

The exclusive authority of the judiciary in the matter of sentencing and process on the one hand, and the equally exclusive authority of the executive with respect to charging of crimes and negotiating the disposition of charges on the other, are not inherently inconsistent. Accommodation is possible while preserving both principles.

A court may not offer any inducement in return for a plea of guilty or nolo contendere. It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right. ■ Leniency in return for a plea of guilty or no contest must be negotiated by the defendant with the prosecutor. If then a bargain is struck, the court has the power to approve or disapprove it.

But a court may indicate to a defendant what its sentence will be on a given set of facts without interference from the prosecutor except for the prosecutor's inherent right to challenge the factual predicate and to argue that the court's intended sentence is wrong. If the prosecutor's argument does not persuade and if the facts as developed are as assumed for the purpose of indicating the sentence, that sentence may then be imposed. If not, then defendant has the option of going to trial or accepting harsher treatment on a guilty or nolo contendere plea. Unless form is exalted over substance, the facts which are the assumed basis of sentence may be expressed in the form of the basis of a conditional plea reserving the defendant's right to withdraw the plea and go to trial in the event the court determines that the facts recited are not confirmed in a fashion which enables it to sentence the defendant in accord with the condition. Substance and not form must control. ■■ Hence, any construction of Penal Code section 1192.5 which requires prosecutorial consent to the permissible scope of judicial power in sentencing rather

than consent to the defendant's offer of a bargain of a plea for lenient treatment is an unconstitutional invasion by the executive of power reserved to the judicial branch. (See *People* v. *Orin, supra,* 13 Cal.3d 937, 949.)[2]

Thus, in the case at bench, we must determine whether the trial judge determined to proceed on defendant's conditional plea of no contest solely in the exercise of his sentencing discretion or whether the judge determined to accept an offer of the defendant to enter his plea in return for more lenient treatment than he otherwise would have received. In the first instance, the judge would be exercising a judicial power with which the executive could not interfere. In the second, he would unconstitutionally be invading the province of the executive branch which had not accepted defendant's offer.

The record is ambiguous on the key factual issue.[3] The judge stated that if the facts were as represented by defendant a state prison sentence was inappropriate, but did not address the matter of county jail incarceration as a condition of probation uninfluenced by the plea of no contest. We cannot, on the record before us, determine whether the trial court's acquiescence in defendant's proposal that there be no jail time was based upon an exercise of sentencing discretion or was in consideration of defendant's plea. The matter must be returned to the trial court to correct the ambiguity.[4]

The alternative writ and stay order are discharged. Let a peremptory writ of mandate issue directing the trial court to rehear and reconsider

---

[2] "[S]entencing discretion wisely and properly exercised should not capitulate to rigid prosecutorial policies manifesting an obstructionist position toward all plea bargaining irrespective of the circumstances of the individual case. As the calendars of trial courts become increasingly congested, the automatic refusal of prosecutors to consider plea bargaining as a viable alternative to a lengthy trial may militate against the efficient administration of justice, impose unnecessary costs upon taxpayers, and subject defendants to the harassment and trauma of avoidable trials. [Citation.] A court may alleviate this burden placed upon our criminal justice system if this can be accomplished by means of a permissible exercise of judicial sentencing discretion in an appropriate case."

[3] Contrary to the dissenting opinion, the trial court did not enter into a "bargain" agreeing to impose a particular sentence irrespective of the truth or falsity of defendant's representations of fact. Sentence has not yet been imposed.

[4] We do not imply that magic words are required to record a trial judge's refusal to enter the bargaining arena. In the usual case, the presumption is that the judge acted as required by law. The case at bench is unusual in that its institutional importance required that we issue an alternative writ. The alternative writ requires our detailed examination of the record.

defendant's conditional plea and to accept it only if to do so involves no consideration of more lenient treatment solely because of the plea.

Lillie, Acting P. J., concurred.

**HANSON, J.**—I dissent.

At the outset, since the instant case does have significant "institutional importance," as noted by the majority opinion, the reporter's transcript of the entire March 1, 1976, in-court proceedings prior to entering the plea of nolo contendere is set forth in the footnote below.[1]

---

[1]"THE COURT: People vs. Felmann.

"MR. TERRY: Don H. Terry for the defendant, Hershey Felmann, who is present.

"The matter is set here for trial, your Honor. We are ready for trial. I anticipate the trial would last eight to ten days by jury.

"I would like to have your Honor entertain a plea of no contest to all counts contained in the information under Section 1192.5 of the Penal Code, which provides as follows: "'Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the Court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the Court thereafter of other powers legally available to it.'

"What we have, if your Honor will accept it, is an offer to plead no contest to all counts of this information if your Honor would impose the following sentence: Proceedings suspended, probation in a length of time to be determined by your Honor, restitution to the three victims in this case who are alleged to have lost money. One is not alleged to have lost money because she was given her thousand dollars back after this. That restitution could amount to as much as $20,800 to Mark Sekulich, $5,500 to Mr. Jerry McAlevey, and $2,800 to Claris Sutton, for a total of $29,100. That your Honor would then also have the discretion to impose a fine up to the extent of $1,000 against Mr. Felmann in addition to this restitution.

"If after reading the probation report your Honor felt that you were not able to abide by the plea specifying the punishment, then we would be allowed to withdraw the plea of nolo contendere and have it again set for trial and proceed thereafter.

"A few statements so your Honor will be aware of the nature of the charges and Mr. Felmann's history:

"The charges charge four counts of grand theft and four counts of forgery, each count of forgery and grand theft going together, so there is a total of four separate transactions, the largest of which is the first in time.

"Mr. Felmann, under the facts most, I think, favorable towards the prosecution's side of the case, went to Mark Sekulich in Long Beach at an antique show, took in a number of statues—and I don't remember how many. Seven to thirteen. I'm not sure. I think it was seven, but I'm not sure—regardless, under the facts, again, most favorable to the prosecution, he represented to Mr. Sekulich that these were either originals or restrikes from an original mold of bronze castings where in truth and in fact they were not, the castings, the bronze statues, were cast in the immediate area within the last six months, representing to him that their value was far in excess of their actual and true value.

"Sekulich, relying upon that, purchased one batch of, I think, seven or eight statues for $2,300.

"Mr. Felmann then again returned on another occasion and sold a total of three

Acknowledging the concept that the constitutional doctrine of separation of powers (executive, legislative and judicial) fundamentally vests

statues to Mr. Sekulich for $6,500, and on a third occasion sold one statue to him for $12,000.

"I'm stating the prosecution's case.

"That thereafter he contacted a Claris Sutton, telling her that these were the statues that he obtained from the estate of a lady in Oregon by trading jewelry for them, and in a similar approach sold her statues for $2,800. And in a similar count to, Mr. Meredith McAlevey for $5,500, for a total of $29,100.

"Mr. Felmann is married, lives in L. A. County, has lived here most of his life, has had one prior conviction, which was for soliciting customers on the sidewalk into a jewelry store, a misdemeanor ordinance, had one prior arrest, a bookmaking case, which was dismissed. That is the extent of his record.

"He has children with children living in the area, has no prior record whatsoever.

"He has a cardiac condition for which he is presently under treatment, and has been employed in the jewelry business for 27 years, at least he had his own store for 17 years and lost his lease, and thereafter has been selling jewelry wholesale to retailers.

"Again, if after reviewing the probation officer's report your Honor felt that you were not able to impose the terms and conditions, you would allow us to withdraw the plea of no contest to all charges.

"MR. NORRIS: If I might.

"The People have indicated to counsel previously that we do not desire to enter into any negotiated sentence plea in this matter whatsoever. We have indicated to counsel if he so desires, out of eight counts, he wished to plead guilty to some two or three felony counts without any prior negotiations as to sentence by either the District Attorney or the Court, that would be satisfactory with the People.

"But we indicate that the section cited by counsel requires the acquiescence of the District Attorney; that the sentence bargain itself is part of a plea bargain, and that is subject also the consent of the District Attorney; that we opposed that plea bargain that was proposed by counsel and also opposed the plea as to nolo contendere.

"MR. TERRY: I suggest to your Honor that People vs Orin—O-r-i-n—at 13 Cal.3d 949 contains dicta in the case that says that in a proper case it does not require the consent of the District Attorney. Where the defendant pleaded guilty or no contest to all charges, of course, no consent is required of the District Attorney for that, which is the consent required for the exercise of discretion by your Honor in sentencing. The case says, " 'On the other hand, sentencing discretion wisely and properly exercised should not capitulate to rigid prosecutorial policies manifesting an obstructionist position towards all plea bargaining irrespective of the circumstances of the individual case. As the calendars of trial courts become increasingly congested, the automatic refusal of prosecutors to consider plea bargaining as an alternative to a lengthy trial may militate against the efficient administration of justice, impose unnecessary costs on taxpayers, and subject defendants to the harassment and trauma of voidable trials. A court may alleviate this burden placed upon our criminal justice system if this can be accomplished by means of a permissible exercise of judicial sentencing discretion in an appropriate case.'

"I suggest to your Honor that all we are asking you to do is say 'Yes, I'll do this if I can after reading the probation report.' That is an exercise of your Honor's discretion. If after reading the report your Honor feels that you cannot exercise that discretion in that regard, then we would continue on and have our trial.

"This does not require the consent nor the approval of the District Attorney.

"THE COURT: The Code section is what?

"MR. TERRY: 1192.5.

"MR. NORRIS: I'll have a few more comments at the time your Honor wishes them.

"THE COURT: Yes. I'm sorry, I don't have your name.

the ultimate power of sentencing in an independent judiciary and that that power should not be compromised (see *People* v. *Tenorio* (1970) 3

---

"MR. NORRIS: Norris—N-o-r-r-i-s, Sterling—S-t-e-r-l-i-n-g.

"THE COURT: Mr. Norris.

"MR. NORRIS: Just for the record, in the context of the Orin case, People would also cite that as the authority that the plea bargain has to be entered into by the People, and we don't enter into the sentencing bargain. As far as the discretionary policy of entering into a sentencing bargain, the District Attorney has that. In fact, in this case, I believe counsel will stipulate that at one time in this case he was offered a felony plea—two or three counts of a felony plea with a County lid, and he indicated at that time he did not wish it.

"I have discussed this case further. It is a case that is a $30,000 theft. If that doesn't amount to a felony and doesn't warrant considerable punishment for that amount of theft if the defendant is so convicted or so pleads, then I think that no other felony might merit it.

"But, not only that, there are significant other factors, that this defendant is engaged in a process of selling these bronzes fraudulently upon the art market; that this same procedure is going on not only here in Southern California but in other parts of California; that it is a significant fraud. It is not just limited to this case. It has significance beyond this case, and as part of the prosecuting agency, we believe those are factors to be taken into consideration.

"It is not a matter of no plea negotiations whatever. There have been plea negotiations in this case. Counsel and the District Attorney cannot arrive at an agreed-at plea bargain, and we feel at that point that we are entitled to go to trial or to have an open felony plea to two or three counts in this case.

"MR. TERRY: What it boils down to, Judge, is really you don't enter into any bargain yourself. Your agreement is subject to your exercise of discretion after reading the probation report. If after reading that you feel you cannot impose the sentence we have discussed, then the whole thing is set aside and we go to trial. But this is an expedient way of seeing where we are going and saving eight to ten days of trial. It is an expedient method of having the People, if they were in fact cheated, get all their money back. The statues are worth $15,000 on the common market as recasts, reproductions. There is no question about that.

"You can exercise your discretion, and you don't have to do that until you have all the facts before you and you can say 'No, I can't do this.' We will simply set it for trial and go on again.

"MR. NORRIS: So the record is clear on that proposition, it is the People's position that this pre-plea—reading of the pre-plea probation report in essence tends to produce more lenient sentences than the other, and being able to sit down and say the man is pleading guilty to a certain number of counts and then your Honor having entire discretion to exercise the proper judicial discretion, doing whatever your Honor feels entirely right or wrong. That is the proper judicial discretion, and not one where there is some type of lever used to get rid of the case, so to speak.

"Again, in this case the People object to any pre-plea probation report. We indicate very clearly that we think we are entitled to our trial on the eight counts now pending, or in lieu thereof, a plea as a felony to two or three counts of that information.

"THE COURT: If I understand Mr. Terry correctly, he is not talking about a pre-plea probation report.

"MR. TERRY: No, sir.

"THE COURT: But offering to plead his client guilty, rather, nolo contendere at this time on all counts.

"MR. TERRY: Yes, your Honor.

"THE COURT: With a County lid.

Cal.3d 89, 94 [89 Cal.Rptr. 249, 473 P.2d 993]; *People* v. *Navarro* (1972) 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481] [both cases are factually

"MR. TERRY: No, no. No County lid. I'm pleading him guilty to all counts—no contest to all counts, not dismissing anything. No plea bargain as such. Then specifying the punishment, which is restitution, probation, up to a certain time, to be determined by your Honor, and we are not saying a lid on it. Your Honor can do whatever he wants—suspend proceedings or a year in the County Jail suspended, whatever way you want to look at it, but that there be restitution in an amount and manner as ordered by the Probation Department and a fine in your Honor's discretion up to the sum of $1,000, which obviously would have to be through the Probation Department because of the money concerned herein. Then if your Honor read that report and says 'No, I can't do it,' we would withdraw our plea and we go to trial.

"MR. NORRIS: Counsel is saying—

"THE COURT: Let me interrupt.

"Mr. Terry, you just said that I could send your client to jail for a year, is that right?

"MR. TERRY: No, sir. I said that you can sentence him as a condition of probation to a year in the County Jail, if you desire, and suspend it. What I'm saying is, the initial punishment as such would be no greater than restitution and a fine, but that if he violated probation, your Honor would have it within his power—if he violated probation during the term and didn't make the payments or didn't abide by the terms and conditions, your Honor would have the power to sentence him to state prison.

"THE COURT: Very well. That is what I understood—or understand, at least, now.

"I think, Mr. Norris, under these circumstances, I should accept this now, because Mr. Terry realizes the wordage of the Code Section he is mentioning, 1192.5, which, after the plea is accepted by the prosecuting attorney, the defendant cannot be sentenced on such a plea to a punishment more severe than specified in the plea.

"Now, if your analysis of the section is correct, Mr. Norris, then the plea under these circumstances would mean nothing. But Mr. Terry has stated the section and understands—rather, from his understanding of the section, it is to his client's benefit to plead nolo contendere under the provisions of this section.

"I don't think the prosecuting attorney's consent to the taking of the plea is necessary. It may be necessary to make a binding agreement, but Mr. Terry is willing to plead his client under the circumstances, realizing the possibility that the District Attorney's attitude is correct, is that right, Mr. Terry?

"MR. TERRY: Yes. I'm saying that if I were to enter a plea of,—say we will plead guilty to four counts and the District Attorney will dismiss the others, and this is the punishment, then we certainly need his approval. There is no question about that. What I'm saying is where you are going to plead, in effect, guilty to all counts and say 'If your Honor would exercise your sentencing discretion in this manner, that is what we will do,' then we do not need his approval. But if, after reading the probation report, your Honor says 'I can't impose the sentence that you want,' then we simply withdraw our plea and we go to trial.

"THE COURT: I agree.

"You may take the plea.

"MR. NORRIS: Your Honor, People would refuse to participate in taking the plea because of our position that we have to agree to the sentence bargain to take the plea.

"May I have just one opportunity to review that Code section again, your Honor?

"THE COURT: Yes.

"What I tried to say, Mr. Norris, is the Code section does not seem to say that it is necessary for the District Attorney to agree for the plea to be taken. It seems to say that it is necessary for the District Attorney to agree in order for the so-called plea bargain to be binding.

"Do you see what I mean? I'm referring to the second paragraph.

distinguishable and pertain to prosecutorial concurrence involving Health & Saf. Code, § 11718 and Welf. & Inst. Code, §§ 3050 and 3051, respectively]), my dissent is based on the following specific and broad general principles.

"MR. TERRY: I think the People vs. Orin case explains it very thoroughly.

"MR. NORRIS: Your Honor, so that the record is abundantly clear on 1192.5 of the Penal Code, the People's position is that to enter into a plea bargain there has to be the consent of the District Attorney in the first place; that the District Attorney has to be willing to agree to a plea negotiation, that plea negotiation taking part not only in the number of pleas but also in regard to any plea-negotiated sentence.

"It is the People's position under the Orin case that there is a two-sided bargain, only approved by the Court, and that the People in this case do not want to participate in the entry of the plea bargain proposed by the defense counsel, and we wish to have our right to have a jury trial, or a trial on the merits, or to enter into a plea with a completely unnegotiated sentence plea to two or three felony counts in this matter.

"THE COURT: I understand that the People are not entering into the plea bargain. My only question now is, will you take the plea at this time—not the plea bargain, but the plea, without respect to the plea bargain?

"There is no question the People are not entering into the plea bargain.

"MR. TERRY: That is correct; there is no question about that. Not only are they not agreeing to it, they are violently opposed to it.

"MR. NORRIS: Yes, your Honor. It is the position of the People that we have a right to have an unnegotiated felony plea in the information that is charged. In this case, what is being proposed is that there be a negotiated plea taken to a sentence that is not acceptable to the People as a part of a pre-plea negotiated process.

"THE COURT: So I understand, Mr. Norris, that the People refuse to take the plea, to accept the defendant's plea?

"MR. NORRIS: Yes. We do not wish to accept the defendant's plea. We stand ready to go to trial, either a Court trial or a jury trial, or to enter into a plea negotiation where there would be pleas taken to two or three counts, felony counts, without anything —without any commitment by the Court whatsoever as to sentence prior to the entry of that plea.

"THE COURT: I'm going to accept the representation of Mr. Terry as to the factual situation that he has outlined as to the prior record of the defendant and as to the background of the defendant otherwise, as to the fact that the defendant has a heart condition, and give the opinion at this time, with the facts as I understand them from Mr. Terry's representation, that this is not a proper case for the defendant to be sentenced to the state prison.

"If, in fact, the defendant is agreeing to all of this restitution; if, in fact, he has a heart condition; if, in fact, he is a family man, has lived in this community most of his life, I think the Court is doing the proper thing by accepting the representation of Mr. Terry on that and saying at this time that I don't believe that it would be a case where he should go to the state penitentiary if he is convicted by a jury trial.

"So it would seem unreasonable to go ahead with a jury trial under these circumstances.

"I am not accepting this to save Court time, but as a practical application of the law.

"Therefore, I am at this time going to rearraign the defendant under these circumstances, realizing that if these facts that I now understand are not true as represented by the probation officer, then I will set aside the plea and it will be a situation where it will probably go to trial then.

"Your true name is Hershey Harold Felmann, is that right?

"THE DEFENDANT: Yes, your Honor."

(The court thereafter took defendant's waiver of constitutional rights.)

*Specifically,* here, defense counsel and the trial judge contend, over strenuous objection by the prosecuting attorney (petitioner herein), that Penal Code section 1192.5[2] (hereinafter section 1192.5) and dicta in *People* v. *Orin* (1975) 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193][3] permit the procedure employed here. I disagree. In my opinion, neither statutory law (particularly section 1192.5) nor case law (particularly *People* v. *Orin, supra*) expressly authorizes such a procedure as employed under the circumstances of the instant case.

In my view, the Legislature never intended that section 1192.5 should sanction such a procedure. It specifically provides that "upon a plea of guilty or nolo contendere," it be "accepted by the prosecuting attorney in open court" and be "approved by the court." Here, the prosecuting attorney did not "accept" the "bargain" struck between defense counsel and the court; the "bargain" was entered into over his strenuous objection.

---

[2]*"Upon a plea of guilty or nolo contendere to an accusatory pleading charging a felony,* the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it.

"*Where such plea is accepted by the prosecuting attorney in open court and is approved by the court,* the defendant, except as otherwise provided in this section, cannot be sentenced on such plea to a punishment more severe than that specified in the plea and the court may not proceed as to such plea other than as specified in the plea.

"If the court approves of the plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

"*If such plea is not accepted by the prosecuting attorney and approved by the court,* the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available.

"If such plea is withdrawn or deemed withdrawn, it may not be received in evidence in any criminal, civil or special action or proceeding of any nature, including proceedings before agencies, commissions, boards, and tribunals." (Added by Stats. 1970, ch. 1123, § 3, amended by Stats. 1974, ch. 72, § 1.) (Italics added.)

[3]"On the other hand, sentencing discretion wisely and properly exercised should not capitulate to rigid prosecutorial policies manifesting an obstructionist position toward all plea bargaining irrespective of the circumstances of the individual case. As the calendars of trial courts become increasingly congested, the automatic refusal of prosecutors to consider plea bargaining as a viable alternative to a lengthy trial may militate against the efficient administration of justice, impose unnecessary costs upon taxpayers, and subject defendants to the harassment and trauma of avoidable trials. (*People* v. *Williams, supra,* 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348].) A court may alleviate this burden placed upon our criminal justice system if this can be accomplished by means of a permissible exercise of judicial sentencing discretion in an appropriate case." (*People* v. *Orin, supra,* 13 Cal.3d at p. 949.)

Moreover, it is not reasonable to assume, since the final disposition or sentence is usually the paramount concern of defendants in criminal cases, that the Legislature intended to create, nor should the courts condone, a situation where under certain circumstances a defendant or his counsel could "plea bargain" for a lesser offense than that charged, either in degree or kind, or for a dismissal of one or more counts of a multi-count indictment or information *with a resultant more lenient sentence which requires prosecutorial acceptance* and then provide that a defendant or his counsel could negotiate directly with the trial court under section 1192.5 *for the same or similar lenient sentence* in exchange for a guilty or nolo contendere plea *without* prosecutorial acceptance.

In *People* v. *Orin, supra,* 13 Cal.3d 937 (factually distinguishable), the California Supreme Court said at pages 942-943:

"The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People* v. *West* (1970) 3 Cal.3d 595, 604-608 [91 Cal.Rptr. 385, 477 P.2d 409].) Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. (*People* v. *West, supra,* 3 Cal.3d at p. 604.) This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment (§ 1192.5), by the People's acceptance of a plea to a lesser offense than that charged, either in degree (§§ 1192.1, 1192.2) or kind (*People* v. *West, supra,* 3 Cal.3d at p. 608), or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution. (§§ 1192.1, 1192.2, 1192.4, 1192.5; *People* v. *West, supra,* 3 Cal.3d at pp. 607-608.) But implicit in all of this is a process of 'bargaining' between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them. (See *People* v. *West, supra,* 3 Cal.3d at pp. 604-605.)

*"However, the court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case over prosecutorial*

*objection. Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition,[8] would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter. (People* v. *Williams* (1969) 269 Cal.App.2d 879, 884 [75 Cal.Rptr. 348].)[9]

"

"[8]Sections 1192.1, 1192.2, 1192.4 and *1192.5 set forth the statutorily prescribed methods for negotiating pleas. All of these statutes require the prosecuting attorney's consent to and acceptance of defendant's plea of guilty.* Although varying forms of plea bargaining not embodied in statutes have received judicial approval (*People* v. *West, supra,* 3 Cal.3d at pp. 607-608), we noted in *West* that '[t]he procedure set forth in these sections provides guidelines which the trial court can utilize in receiving and considering plea bargains involving pleas to lesser offenses.' (3 Cal.3d at p. 608.) In *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604], *we reiterated this position, stating that '[s]ection 1192.5 formalizes the procedures to be followed by the trial courts in dealing with negotiated pleas, commonly known as plea bargaining.'* (*Id.,* at p. 871.)

"[9]It is for these reasons that many authorities considering the question have condemned the concept of 'judicial plea bargaining.' (See, e.g., A.B.A. Project on Minimum Standards for Crim. Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968) § 3.3, pp. 11, 71-75; Note, *The Unconstitutionality of Plea Bargaining* (1970) 83 Harv.L.Rev. 1387, 1392-1393; Note, *Judicial Plea Bargaining* (1967) 19 Stan.L.Rev. 1082, 1090; Comment, *Official Inducements to Plead Guilty: Suggested Morals for a Marketplace* (1964) 32 U.Chi.L.Rev. 167, 187.)" (Italics added.)

The instant case, in my view, cannot be pigeonholed as purely one of "plea bargaining" or "sentence bargaining." The distinctions (as here) are often blurred. There appears to be a merger of the two by way of a final disposition which contains *aspects* of plea bargaining in which prosecutorial acceptance is clearly required under statutory and case law.

*Generally,* in my view, the procedure employed here is a graphic example of our "adversary system" being short-circuited and sacrificed at the altar of "expediency."

Adherence to the adversary system is not a matter of form over substance. The English-speaking peoples for centuries have relied effectively on the adversary system of criminal justice as a method of arriving at a just result. It is a matter of real substance. For a just result to emerge under the adversary system it is axiomatic that the trial judge, sitting at the fulcrum of decision, have, prior to critical points of decision, including sentencing, *input* from both sides of the counsel table which he must weigh and consider.

The prosecuting attorney's total participation in the instant case began and ended with filing the charges and arriving ready for trial. The defense counsel and the trial judge negotiated a final disposition of a serious felony case in an ex parte manner, over the strenuous objection of the prosecuting attorney as if there were no two sides to the counsel table, offhandedly ignoring the objections of society's representative. Certainly, the overall procedure employed here did not insure "the fairness of the bargain to society as well as to the defendant." (*People* v. *Orin, supra,* 13 Cal.3d at p. 943.) Defendant, in essence, sentenced himself with an apparent conflict of interest since he only fined himself $1,000 with no time in custody and agreed to pay back some $30,000 to his victims which he should not have taken in the first place and legally owed in the second place.

Such a procedure as employed here, especially in light of Code of Civil Procedure section 170.6, will have the long-range deleterious effect of breeding further loss of public confidence in our criminal justice system and loss of respect for that system by those engaged in criminal activities.

Moreover, I foresee that the sanctioning of such a procedure could have additional long-range impacts on the criminal justice system by (1) relieving the prosecuting attorney from any part in or responsibility for the final disposition of such matters, thus encouraging sloth in preparation of criminal trials, and (2) affording defense counsel an effective way to eliminate the prosecuting attorney as an adversary in a critical stage of handling.

Finally, "[w]hen an individual judge exercises sentencing discretion, he exercises a judicial power which must be based upon an examination of the circumstances of the particular case before him, and which is subject to review for abuse." (*People* v. *Tenorio, supra,* 3 Cal.3d at p. 95.) Here, before entering into the "bargain" with defense counsel, the trial judge did not explore the nature, extent or treatability of defendant's "cardiac condition." He thus did not examine a necessarily very important consideration for final disposition and provide a record for later review which, in my opinion, constitutes an abuse of discretion.

Accordingly, by reason of the foregoing, I would let a peremptory writ of mandate issue prohibiting the trial court from imposing any sentence in furtherance of the transaction between the trial court and defense counsel entered into without the acceptance of the deputy district attorney, and permit defendant to withdraw his plea of nolo contendere and reinstate his not guilty plea and then proceed to trial or to dispose of the matter by other currently authorized legal means.[4]

A petition for a rehearing was denied July 14, 1976. Hanson, J., was of the opinion that the petition should be granted. Petitioner's application for a hearing by the Supreme Court was denied August 18, 1976.

---

[4]"Plea bargaining" and/or "sentence bargaining," herein involved, has been coming under increasing attack, not only from the public at large but from members of the legal community, as one of the prime causes for loss of public confidence in our criminal justice system. There are strong differences of opinion as to its propriety. Suffice to say, without going into the pros and cons or elaborating on cause and effect, plea bargaining by the process of gradualization has grown to such proportions that today it is the practice rather than the exception, as evidenced by legislative enactments and a proliferation of appeals.

One main factor why plea bargaining has grown to such proportions must be attributed to the delay and/or reluctance of the executive and legislative branches of government to timely create sufficient new courts to service the ever-increasing number of criminal cases which are locked into specific short-time requirements for disposition and to also meet the increasing needs of civil litigants. This lack of sufficient number of courts to expeditiously process today's increased criminal case loads in proven traditional ways, coupled with threats by defendants and defense counsel and prosecuting attorneys to "clog" up the courts, must surely result in some trial courts giving inordinate weight to expediency at the expense of justice and the eroding of both the adversary system of justice and the independence of the judiciary which is so essential.

Thus, in my opinion, business as usual is not the order of the day in this respect. Drastic steps will be required to pull the criminal justice system out of the morass into which it is sinking. While there may be other solutions to alleviate the condition, the quickest and the surest would appear to be (1) the creation of new trial courts in sufficient numbers to "break the log jam" of cases, and (2) abolishing or drastically curtailing plea bargaining.