Filed 8/17/23  Fuchs v. PHH Mortgage Corp. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JOHN R. FUCHS et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>PHH MORTGAGE CORPORATION et al.,<br><br>    Defendants and Respondents. | D082259<br><br><br>(Super. Ct. No. CVRI2101104) |

APPEAL from a judgment of the Superior Court of Riverside County, Godofredo Cuison Magno, Judge.  Affirmed.

Fuchs Law Group, John R. Fuchs and Gail S. Gilfillan, for Plaintiffs and Appellants.

Houser, Robert W. Norman, Jr. Emilie K. Edling and Neil J. Cooper for Defendants and Respondents.

# INTRODUCTION

This appeal arises out of a loan (the Loan) John R. Fuchs[1] obtained to purchase a second home in Palm Desert, California (the Property). At all relevant times, the Loan was held by Wells Fargo Bank, National Association, as Trustee of Option One Mortgage Loan Trust 2006-3, Asset-Backed Certificates, Series 2006-3 (Wells Fargo), which initially was serviced by Ocwen Loan Servicing, Inc. (Ocwen) and later by PHH Mortgage Corporation.[2]

John filed a chapter 11 bankruptcy petition in June 2017. Ocwen filed a claim for pre-petition arrearages on the Loan, composed of two missed monthly payments, assessed foreclosure fees, and an escrow deficiency. During the bankruptcy, John's missed monthly payments and Ocwen's bankruptcy fees became post-petition arrearages. Although the bankruptcy plan provided for payment in full of arrearages on Ocwen's secured claim, Ocwen received only the amount necessary to cure the arrearages on John's post-petition missed payments.

Following the bankruptcy, the loan servicers continued to pursue the unpaid arrearages. John made only regular payments on the Loan, disputing that he owed any additional amount. Based on this dispute, the Fuchses filed a complaint for damages and temporary, preliminary and permanent

---

[1]    Robyn R. Fuchs is also an appellant. For clarity, but intending no disrespect, we use the names John and Robyn for individual references.

[2]    John and Robyn took title to the Property, but only John signed the promissory note (the Note). They both signed the deed of trust (the Deed of Trust) and a subsequent loan modification; however, because only John was listed on the mortgage statements, we write assuming he was the borrower.

injunctive relief (the Complaint) against PHH Mortgage Corporation, Ocwen, and Wells Fargo alleging causes of action for breach of contract, breach of covenant of good faith and fair dealing, violation of the Business and Professions Code, section 17200, et seq., and declaratory relief. The trial court granted summary judgment in favor of PHH, Ocwen, and Wells Fargo on all causes of action. The Fuchses appeal as to PHH Mortgage Corporation, individually and as successor to Ocwen, and Wells Fargo (collectively PHH).

On appeal, the Fuchses argue: (1) John's bankruptcy plan barred PHH from collecting pre-petition arrearages; and (2) a dispute of material fact exists as to the proper unpaid pre-petition arrearage amount.

We limit our review to the boundaries established by the Complaint. In the Complaint, the Fuchses argued that John did not owe pre-petition missed payments or any fees on the Loan contracts. The Complaint did not include allegations based on John's bankruptcy plan; consequently, we decline to consider these arguments.

We conclude that there is no triable issue of material fact that two pre-petition monthly payments and the assessed fees remained unpaid until the payoff of the Loan, at which time PHH properly collected them. With this undisputed factual basis, we agree with the trial court that PHH is entitled to judgment as a matter of law on all causes of action. We thus affirm the judgment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Loan*

In August 2006, the Fuchses purchased the Property as a second home. John obtained the Loan with the Note secured by the Deed of Trust on the Property. At all relevant times, the Loan was held by Wells Fargo. Ocwen

became the loan servicer on March 1, 2013. On May 1, 2019, PHH Mortgage Corporation took over as the loan servicer.

The Deed of Trust provides that the borrower shall reimburse the lender for "costs, fees and expenses . . . arising out of or in connection with this Security Instrument" and any note secured by it, including "appraisal fees, inspection fees, legal fees, . . . foreclosure fees and costs arising from foreclosure of the Property and protection of the security . . . ." The Deed of Trust also states: "If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . . ), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include . . . appearing in court, paying reasonable attorneys' fees . . . . Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument." (collectively, the Fee Clauses).

In 2016, John fell behind on his Loan payments. Ocwen recorded a Notice of Default in August 2016 and a Notice of Trustee's Sale in January 2017. Shortly thereafter, John paid the past due amount required to prevent foreclosure, and Ocwen recorded a notice rescinding the default. Although Ocwen rescinded the default, it assessed additional fees of $2,171.51 for foreclosure costs it had expended, as permitted by the Fee Clauses. Ocwen later assessed an additional $13.25 fee for a property inspection (collectively, the Foreclosure Fees).[3]

John failed to make his May and June 2017 mortgage payments.

---

[3] Although Ocwen may have intended to waive this fee, the Fuchses waived that argument by failing to raise and develop it specifically.

4

B. *The Bankruptcy*

On June 13, 2017, John filed an individual chapter 11 bankruptcy proceeding. Ocwen filed a proof of claim for $11,109.03 (the Proof of Claim), representing the amount necessary to cure the pre-petition arrearages. The Proof of Claim amount included: the $3,248.98 in unpaid principal and interest, the $2,171.51 in Foreclosure Fees, a $3,752.50 existing escrow deficiency, and a $1,936.04 projected escrow shortage for the following year. Ocwen attached receipts for the Foreclosure Fees incurred. John did not object to the Proof of Claim.

During the bankruptcy, Ocwen incurred attorneys' fees and costs for review of the file and payment history ($250), preparing and filing the Proof of Claim ($350), and review of the bankruptcy plan ($400) (collectively, the Bankruptcy Fees). Pursuant to the Fee Clauses, Ocwen assessed the Bankruptcy Fees against John.

The Fuchses sold their primary residence in late 2017. John deposited the proceeds from the sale into the bankruptcy court's registry as required.

On July 11, 2018, the bankruptcy court granted John's motion for approval of a chapter 11 plan. The plan provided for funding through the registry funds and a portion of John's income over a five-year period. The plan included Ocwen as an unimpaired secured creditor, requiring John to "cure any default that occurred before or after the petition date in this case," with arrearages "paid in full," and without altering Ocwen's "legal, equitable, or contractual rights." The bankruptcy court order confirming the plan explains that, under the terms of the plan, unpaid arrearages, including to Ocwen, would be paid "in full . . . via proceeds on deposit in the Court's registry."

5

On July 20, 2018, the bankruptcy court issued an order to disburse funds out of its registry. The order provided for a disbursement of $17,373.07 to Ocwen. Ocwen received that amount on August 2, 2018.

Despite the possible intention of the plan, the payment of $17,373.07 only cured the post-petition arrearages.[4] John made four post-petition payments for a total of $8,740.40, which was a $693.64 overpayment for those months. The $17,373.07 represents nine missed post-petition payments: seven payments of $2,011.69 and two payments of $1,992.44, less the $693.64 post-petition overpayment.

The post-confirmation chapter 11 monthly operating report filed by John likewise states that $17,373.07 was the amount of post-petition arrearages.

On September 17, 2018, the bankruptcy court issued an "Order of Final Decree Closing Case." John did not receive a discharge but retained the ability to reopen the bankruptcy proceeding in order to obtain a discharge upon completion of plan payments.

C. *Post-Bankruptcy Payments*

After bankruptcy, Ocwen's mortgage statements showed a $11,109.03 pre-petition arrearage amount due, but John only paid the regular amount due each month.

Upon transfer of the account to PHH for servicing on May 1, 2019, PHH sent John a transfer statement showing that the account had an escrow deficiency of $4,536.13, along with unpaid principal and interest of $4,187.26 and $3,184.76 in fees. PHH's regular mortgage statements likewise included the $3,184.76 as Assessed Expenses. The mortgage statements also showed a Past Unpaid Amount each month. John continued sending the regular post-

_____

[4]     We do not consider or determine the meaning of the plan.

6

petition monthly payment amount through December 2020 but did not pay the Assessed Expenses or Past Unpaid Amount.

Between mid-2019 and early 2021, John sent two letters and made multiple phone calls to PHH to dispute the Assessed Expenses and Past Unpaid Amount. In response, PHH stated that it had researched the matter, determined that the bankruptcy was only administratively closed, and determined there was no error. It advised John to contact its bankruptcy counsel with further questions and provided relevant contact information. The Fuchses did not contact the bankruptcy counsel.

D. *Sale of the Property*

The Fuchses voluntarily sold the Property in April 2021. To close escrow, PHH required a payoff amount that included unpaid principal, interest on the principal, the escrow deficiency, the Foreclosure and Bankruptcy Fees, and two small administrative fees.[5] The principal balance and escrow deficiency were derived from PHH's Customer Account Activity Statement for 2019–2021, which provided an accounting of the transactions on John's account during PHH's servicing. The PHH accounting was a continuation of Ocwen's Payment Reconciliation History beginning in

---

[5]    The amount in each category was: $345,844.69 in unpaid principal; interest of $7,847.15 from October 1, 2020, though the April 12, 2021, loan payoff; an unpaid escrow balance of $6,390.76; the $3,184.76 in Foreclosure and Bankruptcy Fees; a $15 lien release fee; and a $201 recording fee. Interest ran from October 1, 2020, because PHH applied each of John's post-petition regular payments to the past due amount, rather than to the present month. John was two payments behind from the pre-petition missed payments and his last payment was for December 2020. The Fuchses do not contest the interest or two administrative fees. They contest the two missed pre-petition payments (part of the principal and unpaid escrow) and the Foreclosure and Bankruptcy Fees.

7

February 2013 when it became the loan servicer (collectively, the Accounting).

The Accounting traces John's mortgage payments from Ocwen's servicing to the transfer of service to PHH to loan payoff, applying portions of each payment to principal, interest, and escrow. The Accounting reflects that John failed to make the May and June 2017 payments and did not subsequently make these payments. Throughout the Accounting, the Escrow Balance decreased with each contribution and increased once taxes were paid. The Foreclosure Fees and Bankruptcy Fees also appear in the Accounting.

On April 12, 2021, PHH received the outstanding balance to pay off the loan and reconveyed the Deed of Trust.

E. *The Present Lawsuit*

Prior to the sale, on February 3, 2021, the Fuchses filed the Complaint against PHH, Ocwen, and Wells Fargo, alleging four causes of action: (1) PHH breached the Note and Deed of Trust by improperly demanding payments of $7,307.42, composed of the $4,122.66 Past Unpaid Amount and the $3,184.76 Assessed Expenses; (2) PHH violated the covenant of good faith and fair dealing implied in the Note and Deed of Trust by making false payment demands, failing to accurately account for the amount due, failing to negotiate the dispute as to the proper payment amount in good faith, promising to resolve the dispute and not doing so, and failing to abide by statutory requirements for lenders and loan servicers; (3) PHH committed unlawful, unfair, and fraudulent business practices (Bus. and Prof. Code, §§ 17200 et seq.) by violating California Civil Code sections 2923.5 and 2923.6, by violating the Note and Deed of Trust and duty of good faith and fair dealing, by making misrepresentations regarding dispute resolution, and

8

by failing to provide a detailed and accurate accounting; and (4) declaratory relief was proper because the Past Unpaid Amount and Assessed Expenses were false charges that must be removed from PHH's mortgage statements.

PHH moved for summary judgment on the basis that no triable issue of material fact existed, arguing PHH properly collected the unpaid funds. Along with the motion, PHH requested the trial court take judicial notice of the Deed of Trust and relevant bankruptcy documents, which the trial court granted.

The Fuchses opposed the motion, arguing that 11 U.S.C. § 1141 and res judicata bar PHH's collection of the $11,109.03 in pre-petition past due amounts because Ocwen failed to demand payment of that amount from the bankruptcy court register.

On April 28, 2022, the trial court issued an order granting PHH's motion for summary judgment, finding that PHH met its initial burden to show that the charges were proper. The Fuchses then failed to provide evidence that the $17,373.07 amount included the $11,109.03 in pre-petition arrears shown in Ocwen's Proof of Claim. The bankruptcy court's order confirming the bankruptcy plan required John to pay the arrearages in full on the Ocwen claim, which included pre-petition and post-petition arrearages. Because the plan and confirmation order required John to pay the arrearages in full to Ocwen, the trial court held: (1) PHH's act of collecting pre-petition arrearages was not a breach of the Note or Deed of Trust; (2) PHH's act of collecting pre-petition arrearages was not a violation of the duty of good faith and fair dealing; (3) the Fuchses did not suffer injury in fact as required by Business and Professions Code section 17204; additionally, Civil Code section 2024.15, subdivision (a)(1) makes Civil Code sections 2923.5 and 2923.5 applicable only to an owner-occupied principal

9

residence; and (4) the cause of action for declaratory relief was moot because the pre-petition arrearages had been paid.

The Fuchses timely appealed the judgment.

## II.

## DISCUSSION

On appeal, the Fuchses argue: (1) PHH's demand and collection of $11,109.03 in pre-petition arrearages was improper because it failed to seek them in his confirmed bankruptcy plan (11 U.S.C. § 1141, subd. (a)); and (2) a dispute of material fact exists as to the calculation of the $11,109.03 in pre-petition arrearages claimed and whether that was the amount PHH required John to pay.

PHH responds: (1) the Fuchses' bankruptcy theories were outside the pleadings; (2) no triable issue of fact exists; and (3) the trial court properly granted summary judgment based on the undisputed facts and claims in the Complaint. PHH also disputes the merits of the Fuchses' bankruptcy claims and jurisdiction in state court to decide them.

We conclude that the Fuchses' bankruptcy arguments were outside the pleadings and decline to consider them. We further conclude that no dispute of material fact exists as the unpaid amount due to PHH at loan payoff and thus affirm the judgment for PHH.

A. *Summary Judgment Standard*

A trial court properly grants summary judgment when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears the burden of persuasion" on both points. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

We review the trial court's grant of summary judgment de novo based on the evidence that was before the trial court, " ' "liberally constru[ing] the evidence in support of the party opposing summary judgment and resolv[ing] doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) " '[T]he relevant facts are limited to those set forth in the parties' statements of undisputed facts, supported by affidavits and declarations, filed in support of and opposition to the motion in the present case, to the extent those facts have evidentiary support.' " (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 175.)

In our independent summary judgment review, we " 'employ[] the same process as the trial court.' " (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054.) That process begins with "identif[ying] the issues framed by the pleadings." (*Ibid.*) Indeed, the pleadings " 'set the boundaries of the issues to be resolved at summary judgment.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) As to each cause of action in the pleadings, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, *supra,* 25 Cal.4th at p. 850.) To satisfy the initial burden of production, a moving defendant must present evidence "that the plaintiff cannot establish at least one element of the cause of action." (*Id.* at pp. 853–854.) The defendant's evidence must "show[] that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Ibid.*) Once the defendant has done so, the burden of production shifts to the plaintiff to present evidence "to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.)

Then "we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

B. *Boundaries Set by the Pleadings*

The Complaint alleged improper charges of $7,307.42, composed of the $4,122.66 "Past Unpaid Amount" and the $3,184.76 "Assessed Expenses" as demanded in the December 2020 mortgage statement. The Complaint does not reference the $11,109.03 Proof of Claim figure or contain any allegation that the escrow deficiency was improperly calculated. Except to the extent these amounts make up part of the $7,307.42, they fall outside the scope of this appeal.

None of the allegations in the Complaint are based on John's bankruptcy plan. Consequently, we decline to consider any such arguments in reviewing the judgment. (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1489 ["Moreover, if ZRG&L wished to pursue Larson under the terms of the plan, the plan should have been raised as a basis for its claims in its complaint."].)

C. *Undisputed Facts*

No triable dispute of material fact exists that the two pre-petition missed payments and the Foreclosure and Bankruptcy Fees remained unpaid when PHH collected the loan payoff. The Proof of Claim and the Accounting demonstrate that these two payments and the Foreclosure Fees were unpaid when John filed for bankruptcy. The Accounting shows the additional post-petition Bankruptcy Fees. The Accounting and John's post-confirmation bankruptcy Monthly Operating Report demonstrate that the $17,373.07 payment paid only post-petition arrearages. And John admittedly made only regular payments post-petition through December 2020.

12

PHH thus provided sufficient evidence that it only collected the proper outstanding amount at loan payoff, shifting the burden to the Fuchses to provide evidence otherwise. In response, the Fuchses provided John's declaration without evidentiary support, which fails to create a dispute of material fact.

The Fuchses cannot simply create a disputed material fact by feigning ignorance of undisputed facts or arguing that "PHH's numbers do not add up." PHH presented the Accounting to demonstrate the accuracy of its loan payoff calculation through tracing principal and interest amounts, escrow advances, and assessed fees. The Fuchses have not presented evidence that the Accounting is inaccurate.

In particular, the Fuchses argue that there is a dispute as to the calculation of the $11,109.03 figure from the Proof of Claim. This argument falls outside of the Complaint. Regardless, this figure is immaterial because the Accounting independently calculated the loan payoff amount without relying on the $11,109.03 pre-petition arrearage figure (though some of the same unpaid principal and interest amounts, escrow advances, and assessed fees certainly were part of both the loan payoff amount and the pre-petition arrearages). PHH only required payment of amounts John had not previously paid.

The Fuchses briefly argue that a disputed fact exists as to the pre-petition Foreclosure Fees due to "a lack of documentary evidence."[6] We conclude that the Fuchses have not sufficiently developed this argument for our consideration. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172

---

[6] The Fuchses did not make any argument as to the documentation of post-petition fees.

13

Cal.App.4th 857, 862.)  The record contains the Deed of Trust permitting the fee assessment and the Proof of Claim containing receipts for these fees.

In sum, there is no triable dispute of material fact that the pre-petition missed payments and fees were unpaid until loan payoff.

D.  *Judgment as a Matter of Law*

Based on the undisputed fact that the pre-petition missed payments and fees remained unpaid when collected at loan payoff, PHH is entitled to judgment as a matter of law on all causes of action.

Because the amount PHH charged was authorized by the Note and Deed of Trust, PHH did not breach the contract by collecting and the Fuchses suffered no damages by paying that amount.  "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)  Ocwen was contractually permitted to shift fees incurred due to the Fuchses' default to their debt.  PHH was entitled to collect the unpaid principal, escrow shortage, and properly assessed fees.

PHH likewise did not breach the implied covenant of good faith and fair dealing by collecting these unpaid, properly demanded amounts.  The covenant requires that neither party to a contract, including lenders and borrowers, "do anything which will injure the right of the other to receive the contract's benefits."  (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928–929.)  The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 349–350.)  Neither party has an "obligation in California to bargain for a new or amended contract in good faith."  (*Racine & Laramie, Ltd. v. Department of*

14

*Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1035.) PHH was entitled to the full benefit provided under the Note and Deed of Trust and had no duty to negotiate for less than the contractual amount owed.

Because it is undisputed that the Fuchses paid only previously unpaid, contractually due amounts, the Fuchses lack standing to bring a cause of action for unlawful, unfair, or fraudulent business acts and practices because they have not "suffered injury in fact" or "lost money or property as a result of the unfair competition" as required for individuals to bring such actions. (Bus. & Prof. Code, § 17204.)

Finally, the Fuchses' cause of action for declaratory relief to remove the charges from the mortgage statements and account is moot because the Loan has been paid in its entirety.

DISPOSITION

The judgment is affirmed. PHH is entitled to costs on appeal.


McCONNELL, P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

15